**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| P. STEPHEN LAMONT, individually and as Nominee for 100% of the Capital Shares of Iviewit Holdings, Inc., <br><br> Plaintiff, <br><br> v. <br><br> PROSKAUER ROSE LLP, *et al.*, <br><br> Defendants. | Civil Action No. 11-949 (BJR) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE PROSKAUER DEFENDANTS' MOTION TO DISMISS**

Gregg M. Mashberg (admitted *pro hac vice*)
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036-8299
212.969.3000
212.969.2900 (fax)
gmashberg@proskauer.com

James F. Segroves (D.C. Bar No. 480630)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)
jsegroves@proskauer.com

*Attorneys pro se for Defendant
Proskauer Rose LLP and Attorneys for
Defendants Kenneth Rubenstein, Christopher
C. Wheeler, and the late Stephen C. Krane*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT ...................................................................................................................1

    I.    LAMONT HAS NO STANDING TO SUE IN ANY CAPACITY ................................1

    II.   LAMONT'S FEDERAL CLAIM IS BARRED BY *RES JUDICATA* AND OTHERWISE FAILS TO STATE A CLAIM ...................................................................2

        A.   *Lamont I* Involved the Same Federal Claim at Issue Here .....................2

        B.   *Lamont I* Produced a Final, Valid Judgment on the Merits ...................3

        C.   Lamont's Public-Policy Argument Is Meritless .......................................6

        D.   Lamont Fails to Allege a Cognizable § 1983 Claim................................7

    III.  LAMONT'S COMMON-LAW CLAIMS ARE TIME-BARRED AND OTHERWISE FAIL TO STATE A CLAIM ...................................................................8

CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Airways Charters, Inc. v. Regan*,
   746 F.2d 865 (D.C. Cir. 1984) ................................................................................................ 1

*Apotex, Inc. v. FDA*,
   393 F.3d 210 (D.C. Cir. 2004) ............................................................................................ 2, 6

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
   No. 00-1401 (PLF/JMF), 2010 U.S. Dist. LEXIS 110981 (D.D.C. Oct. 19, 2010) .................. 4

\* *Bernstein v. New York*,
   591 F. Supp. 2d 448 (S.D.N.Y. 2008) ................................................................ 2, 3, 4, 5, 6, 8

*Clark v. Yosemite Valley Cmty. College Dist.*,
   785 F.2d 781 (9th Cir. 1986) ............................................................................................. 3, 7

*Collins v. Miller*,
   338 F. App'x 34 (2d Cir. 2009) .............................................................................................. 8

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) ........................................................................................................... 3, 6

*Greenfield v. Mather*,
   32 Cal. 2d 23 (1948) .............................................................................................................. 7

*Hendel v. World Plan Exec. Council*,
   705 A.2d 656 (D.C. 1997) ..................................................................................................... 9

*Hicks v. Williams*,
   No. 06-5017, 2006 U.S. App. LEXIS 20423 (D.C. Cir. Aug. 7, 2006) .................................. 8

*Hight v. Hight*,
   67 Cal. App. 3d 498 (Cal. Ct. App. 1977) ............................................................................. 7

*Houlihan v. Anderson-Stokes, Inc.*,
   434 F. Supp. 1324 (D.D.C. 1977) .......................................................................................... 9

*In re Smith*,
   329 F. App'x 805 (10th Cir. 2009) ........................................................................................ 6

---

\*   Authorities upon which we chiefly rely are marked with asterisks.

*Jackson v. Jackson*,
  253 Cal. App. 2d 1026 (Cal. Ct. App. 1967) .................................................................... 7

*Lawrence v. Acree*,
  665 F.2d 1319 (D.C. Cir. 1981) (per curiam) ................................................................. 9

*Lewis v. Bayh*,
  577 F. Supp. 2d 47 (D.D.C. 2008) ................................................................................... 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................................... 1

*Porter v. Shah*,
  606 F.3d 809 (D.C. Cir. 2010) .................................................................................... 2, 3

*Selkirk v. State*,
  249 A.D.2d 818 (3d Dep't 1998) ................................................................................... 10

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497 (2001) ......................................................................................................... 6

*Slater v. Blackwood*,
  15 Cal. 3d 791 (1975) ...................................................................................................... 7

*Stanton v. D.C. Ct. of Appeals*,
  127 F.3d 72 (D.C. Cir. 1997) ........................................................................................... 7

*Stubbolo v. City of New York*,
  No. 115474/2006, 2008 N.Y. Misc. LEXIS 8078 (N.Y. Sup. Ct. Nassau Cnty.
  Apr. 23, 2008), *aff'd in part & modified in part*, 63 A.D.3d 541 (1st Dep't 2009) ................... 9

*United States v. Barret*,
  111 F.3d 947 (D.C. Cir. 1997) ......................................................................................... 4

*United States v. Brinkworth*,
  68 F.3d 633 (2d Cir. 1995) ............................................................................................... 4

*United States v. Kubrick*,
  444 U.S. 111 (1979) .................................................................................................. 8, 10

**STATUTES**

28 U.S.C. § 455(b)(4) ............................................................................................................ 4

28 U.S.C. § 455(d)(4)(i) ........................................................................................................ 4

28 U.S.C. § 455(f) ................................................................................................................. 5

42 U.S.C. § 1983 ....................................................................................................... 2, 3, 7, 8

Defendants Proskauer Rose LLP, Kenneth Rubenstein, Christopher C. Wheeler, and the late Steven C. Krane (collectively, the "Proskauer Defendants") respectfully submit this reply memorandum of points and authorities in support of their motion to dismiss this action with prejudice, ECF No. 21.

**ARGUMENT**

**I.   LAMONT HAS NO STANDING TO SUE IN ANY CAPACITY**

Plaintiff P. Stephen Lamont ("Lamont") essentially concedes he has no standing to maintain this action. To have standing as an individual, one must have a concrete interest in the outcome. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Lamont admits he is not an inventor of the technologies in question (Pl.'s Opp'n ¶ 11, ECF No. 28) and fails to allege any proprietary interest in the allegedly stolen patents. Lamont's allegation that he is a "significant shareholder" of Iviewit fares no better, since a shareholder cannot assert claims belonging to the corporation. *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984). With no concrete interest as an individual, Lamont has no standing to bring this lawsuit in his individual capacity.

As a *pro se* litigant, Lamont may only represent himself and may not represent the interests of others, such as other shareholders. *See* Proskauer Defs.' Mem. at 12-13, ECF No. 21 (collecting cases). Therefore, Lamont's undocumented claim that other Iviewit shareholders have "transferred their holdings to him for purposes of the instant action" or that he is a "nominee" changes nothing. Pl.'s Opp'n ¶ 13. A shareholder cannot sue on behalf of a corporation. *See* Proskauer Defs.' Mem. at 13. Nor may Lamont represent Iviewit's interests because Lamont is a *pro se* litigant. Thus, as a matter of law, Lamont lacks standing as he has no cognizable interest to bring this suit in his individual capacity and he cannot sue in any other capacity.

Case 1:11-cv-00949-BJR   Document 48   Filed 06/04/12   Page 6 of 15

## II. LAMONT'S FEDERAL CLAIM IS BARRED BY *RES JUDICATA* AND OTHERWISE FAILS TO STATE A CLAIM

The doctrine of *res judicata* bars a lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (internal quotations and citation omitted). As the Proskauer Defendants explained in their opening memorandum of law (at 13-15), Lamont's only federal claim in this case—a claim under 42 U.S.C. § 1983—was dismissed with prejudice in *Lamont I*. In response, Lamont challenges the first and third elements for applying the doctrine of *res judicata*, while also asking this Court to recognize a general public-policy exception to the doctrine. *See* Pl.'s Opp'n ¶¶ 16-28. That effort fails, as does Lamont's effort to manufacture a state actor necessary to assert a cognizable § 1983 claim.

### A.  *Lamont I* Involved the Same Federal Claim at Issue Here

Lamont suggests that because *Lamont I* was "marked as related" to other cases in the Southern District of New York that did not involve § 1983 claims identical to the one at issue here, that somehow affects this Court's *res judicata* inquiry. Pl.'s Opp'n ¶¶ 17-18. It does not. What matters is the § 1983 claim asserted in *Lamont I*, which is on all fours with the § 1983 claim asserted here. *See* Proskauer Defs.' Mem. at 13-14; *see also Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (explaining that "[w]hether two cases implicate the same cause of action turns on whether they share the same nucleus of facts," an inquiry aided by considering whether "the facts are related in time, space, origin, or motivation") (internal quotations and citations omitted).

Lamont's suggestion (Pl.'s Opp'n ¶ 21) that his § 1983 claim is based on events after *Lamont I* also fails. Lamont's Complaint in this case does not allege any post-*Lamont I* conduct

- 2 -

by the Proskauer Defendants that even arguably supports a § 1983 claim. Therefore, the principal authority on which Lamont relies is clearly inapposite. *See Clark v. Yosemite Valley Cmty. College Dist.*, 785 F.2d 781, 789 (9th Cir. 1986) (noting that *res judicata* applies to a particular defendant's conduct at "the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts determined in the judgment" but may not apply to post-judgment facts or conditions that give rise to a new claim between the same parties).

      B.      ***Lamont I*** **Produced a Final, Valid Judgment on the Merits**

Contrary to Lamont's assertion (Pl.'s Opp'n ¶ 21), the district court's decision in *Lamont I* dismissing his § 1983 claim with prejudice constitutes a final judgment on the merits. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"). Lamont further complains that he was not given an adequate opportunity to present his § 1983 claim in *Lamont I* because the case was dismissed prior to discovery. Pl.'s Opp'n ¶ 20. That, however, is no ground on which to avoid *res judicata*. *See Porter*, 606 F.3d at 814 (rejecting argument that *res judicata* should not apply because plaintiff was denied discovery in previous action).

Lamont also questions the validity of the final judgment entered in *Lamont I* and later affirmed, claiming that two judges involved in the process should have recused themselves because of supposed financial conflicts of interest involving parties other than the Proskauer Defendants. *See* Pl.'s Opp'n ¶¶ 23-27. In doing so, Lamont now adds District Judge Shira A. Scheindlin and Circuit Judge Richard C. Wesley to the long list of allegedly "conflicted" lawyers, judges and disciplinary officials who have rejected his claims. Lamont's disparaging allegations cannot spare him the effects of *res judicata*.

Lamont's collateral attack on Judge Scheindlin's decision in *Lamont I* is impermissible for a host of reasons. First, Lamont failed to raise the issue of Judge Scheindlin's alleged stock ownership before the Southern District of New York or the Second Circuit. *See United States v. Barret*, 111 F.3d 947, 951 (D.C. Cir. 1997) (recognizing that a party cannot take his chances with a judge and then, if he does not like the judgment, secure a disqualification hearing). Judge Scheindlin's 2008 financial disclosures contained the information regarding her investments that Lamont now seizes upon in an effort to escape *Lamont I*, which was decided on August 8, 2008. *See* Pl.'s Opp'n ¶ 23. Lamont's delay in raising this claim until he sought a "do over" in this Court is inexcusable.

Second, Lamont's objection is untimely because he first asserted it nearly three years and four decisions *after* Judge Scheindlin dismissed *Lamont I*. *See Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, No. 00-1401 (PLF/JMF), 2010 U.S. Dist. LEXIS 110981, at *7-9 (D.D.C. Oct. 19, 2010) (holding a motion for recusal untimely when it was filed three and a half years after the events supposedly justifying recusal took place); *United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995) ("A party must bring a disqualification motion at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.") (internal quotations and citation omitted).

Third, Judge Scheindlin was not required to recuse herself. Under 28 U.S.C. § 455(b)(4), a judge must recuse herself from cases in which "[s]he, individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding." "Financial interest," however, does not include "ownership in a mutual or common investment fund that holds securities . . . *unless* the judge participates in the management of the fund." § 455(d)(4)(i) (emphasis added). Here, Lamont

alleges that Judge Scheindlin was a "constructive owner" of shares in Intel Corporation. Pl.'s Opp'n ¶ 23. Constructive ownership does not imply that Judge Scheindlin was an "active participant," instead suggesting something akin to owning shares of a mutual fund. Without more, any alleged conflict of interest is pure speculation.

Another exception to the general rule allows the judge who discovers a financial interest "after substantial judicial time has been devoted to the matter" to continue presiding over the case if the judge divests herself of the "interest that provides the grounds for disqualification." 28 U.S.C. § 455(f). The published opinion in *Lamont I* underscores that Judge Scheindlin spent a substantial amount of time on the matter. *See Bernstein v. New York*, 591 F. Supp. 2d 448, 470 (S.D.N.Y. 2008) (observing that Lamont had burdened the district court "with more than one thousand paragraphs of allegations," none of which stated a "legally cognizable federal claim against a single defendant"). In addition to spending a significant amount of time on Lamont's Amended Complaint, Lamont alleges that Judge Scheindlin divested herself of any Intel stock before issuing the order that dismissed the case. *See* Pl.'s Opp'n ¶ 23. And even if Judge Scheindlin should not have decided the initial motion to dismiss, Lamont concedes that she was qualified to decide his motion for reconsideration on December 15, 2010, because she did not hold IBM or Intel stock at that time. *See* Pl.'s Opp'n ¶ 23.

Apart from being just as untimely, Lamont's collateral attack on the Second Circuit's order affirming Judge Scheindlin's dismissal decision is impermissible for at least two additional reasons. First, Lamont alleges that one member of the three-judge panel that dismissed Lamont's original appeal (Judge Wesley) was conflicted because Judge Wesley receives a pension from New York State based on his service as a state appellate judge. Pl.'s Opp'n ¶ 24. However, Lamont makes no allegation regarding the other two panel members (Judges Hall and

Livingston). The Second Circuit panel unanimously and summarily affirmed the dismissal of *Lamont I*. *See* Mashberg Decl. Ex. 1.C, ECF No. 21-4. Therefore, the fact that Lamont alleges that one judge *may* have had a conflict of interest is insufficient to disturb the panel's decision as a matter of law. *See In re Smith*, 329 F. App'x 805, 808-09 (10th Cir. 2009) (noting that where litigant does not argue the other two appellate panelists were biased and the panel's decision is unanimous, the panel's decision remains valid).

Second, even if Judge Wesley had been the deciding vote to affirm Judge Scheindlin's decision, the mere receipt of a government pension does not disqualify a judge from ruling in a case in which the government is a party. Were such payments sufficient to create a conflict, a federal judge could never preside over a case in which the United States is a party because the judge receives a paycheck from the federal treasury. That, in turn, would render impossible the criminal prosecution of any federal crime, not to mention the adjudication of civil claims involving federal agencies and officials. Clearly, such an illogical and extreme position should be rejected outright.

### C. Lamont's Public-Policy Argument Is Meritless

Lamont relies on California state cases in arguing that this Court should apply a general public-policy exception to the *res judicata* doctrine. *See* Pl.'s Opp'n ¶ 19. Federal law controls this Court's inquiry, however, not California law. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001) (explaining that federal law controls *res judicata* effect of previous decisions entered by federal courts on federal questions). Under federal law, "[t]here is no general public policy exception to the operation of *res judicata*." *Apotex*, 393 F.3d at 219; *see also Moitie*, 452 U.S. at 401 (rejecting lower court's reliance on "simple justice" and "public policy" in declining to apply *res judicata*).

Even if federal law recognized such an exception, it would not apply here. In fact, Lamont's argument that he should be granted an exception from *res judicata* contravenes the longstanding public policy behind the doctrine. That public policy strikes a careful balance between allowing litigants their day in court and vexatious, duplicative litigation. *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997). Both state and federal courts have recognized this balance, holding that the principal California authority on which Lamont relies—*Greenfield v. Mather*, 32 Cal. 2d 23 (1948)—is of "doubtful validity." *Slater v. Blackwood*, 15 Cal. 3d 791, 796 (1975); *Clark*, 785 F.2d at 788.[*]

### D. Lamont Fails to Allege a Cognizable § 1983 Claim

Even if the Court were to assume for the sake of argument that *res judicata* does not apply, as the Proskauer Defendants explained in their opening memorandum of law (at 14 n.16), Lamont's § 1983 claim still fails because none of the Proskauer Defendants are state actors. Lamont essentially ignores this fatal weakness, focusing instead on claiming that he was deprived of rights, privileges or immunities secured by the Constitution. *See* Pl.'s Opp'n ¶¶ 29-44. Although Lamont also repeats his allegation that one of the Proskauer Defendants (Krane) was a "public officer" of an attorney disciplinary panel (Pl.'s Opp'n ¶ 37), Lamont continues to ignore the fact that the allegations he levels against Krane relate to conduct allegedly taken in Krane's capacity as a *private* attorney. *See* Proskauer Defs.' Mem. at 14 n.16.

---

[*] To the extent *Greenfield* is still good law in California, the circumstances in which it has been applied involved conflicting judgments, *Greenfield*, 32 Cal. 2d at 34; *Jackson v. Jackson*, 253 Cal. App. 2d 1026, 1040 (Cal. Ct. App. 1967), or the party seeking its benefit exercised only nominal control over the prior litigation, *Hight v. Hight*, 67 Cal. App. 3d 498, 502, 504 (Cal. Ct. App. 1977). Neither circumstance is present here.

Even if one assumed for the sake of argument that Krane was a state actor, § 1983 still requires an interest protected by the Constitution or federal law. Here, Lamont has none. In particular, there is no constitutionally protected right to attorney discipline. *See* Proskauer Defs.' Mem. at 16.

Moreover, even if Lamont had a constitutionally protected right to attorney discipline, the statute of limitations has already run on such a claim. The last alleged action by any of the Proskauer Defendants occurred no later than the summer of 2004. *See Lamont I*, 591 F. Supp. 2d at 467. The three-year statute of limitation for asserting a § 1983 claim strikes a careful balance that allows liability to exist against governmental actors who would otherwise have immunity. Those three years expired by the summer of 2007 and the Court should not "extend the waiver [of liability] beyond that which Congress intended." *United States v. Kubrick*, 444 U.S. 111, 118 (1979); *see also Hicks v. Williams*, No. 06-5017, 2006 U.S. App. LEXIS 20423, at *3-4 (D.C. Cir. Aug. 7, 2006) (borrowing District of Columbia three-year statute of limitations for use in § 1983 actions); *Collins v. Miller*, 338 F. App'x 34, 36 (2d Cir. 2009) (borrowing New York three-year statute of limitations for use in § 1983 actions).

### III.  LAMONT'S COMMON-LAW CLAIMS ARE TIME-BARRED AND OTHER-WISE FAIL TO STATE A CLAIM

As the Proskauer Defendants explained in their opening memorandum of law (at 16-17), Judge Scheindlin's findings in *Lamont I* provide a complete basis for dismissing all of Lamont's common-law claims with prejudice on statute-of-limitation grounds, which relief the Court should afford the Proskauer Defendants instead of declining to exercise supplemental jurisdiction over Lamont's common-law claims. Lamont nonetheless asserts that the alleged actions of defendants other than the Proskauer Defendants allow the relevant statutes of limitation to run anew under the continuing-wrong doctrine. *See* Pl.'s Opp'n ¶¶ 47-53.

This Circuit, however, does not recognize the continuing-wrong doctrine "absent special circumstances." *Lawrence v. Acree*, 665 F.2d 1319, 1324 (D.C. Cir. 1981) (per curiam); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 53 (D.D.C. 2008) (internal quotations omitted). For example, as this Court noted in *Lewis*, "absent fraudulent concealment, the statute of limitations runs separately for each overt act making up the conspiracy." 577 F. Supp. 2d at 53. Fraudulent concealment requires that a party seeking to use a statute-of-limitations defense have been fraudulent *and* subsequently succeed in concealing the fraud. *Houlihan v. Anderson-Stokes, Inc.*, 434 F. Supp. 1324, 1327 (D.D.C. 1977). Here, Lamont alleges that the Proskauer Defendants committed patent fraud sometime before 2001. Absent from the Complaint are any allegations that the Proskauer Defendants successfully covered up the supposed fraud after the termination of the attorney-client relationship in 2001. *See* Proskauer Defs.' Mem. at 19.

The same would be true even if the Court were to apply District of Columbia or New York law. The District of Columbia has declined to follow the "continuous tort" doctrine, stating that "once the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 667 (D.C. 1997). New York recognizes the "continuing tort" doctrine only in limited situations, such as intentional infliction of emotional distress, employment discrimination and lease violations, none of which are present here. *Stubbolo v. City of New York*, No. 115474/2006, 2008 N.Y. Misc. LEXIS 8078, at *4 (N.Y. Sup. Ct. Nassau Cnty. Apr. 23, 2008), *aff'd in part & modified in part*, 63 A.D.3d 541 (1st Dep't 2009). Moreover, for the doctrine to apply, the alleged continuing wrong "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." *Selkirk v. State*, 249 A.D.2d 818, 819 (3d Dep't

1998). Lamont's Complaint fails to allege that any of the Proskauer Defendants committed any act after 2004. Thus, even if there was wrongdoing, which the Proskauer Defendants categorically deny, the continuing-wrong doctrine does not apply.

Even assuming, *arguendo*, that third parties engaged in a vast conspiracy to cover up the alleged fraud, Lamont knew of it, as evidenced by his filing of a disciplinary complaint against Rubenstein "alleging fraud in the filing of the provisional patent applications." Compl. ¶ 54. Iviewit also filed a malpractice counterclaim in the fee action in Florida. *See* Proskauer Defs.' Mem. at 18 n.18. Indisputably, Iviewit knew of the alleged fraud and alleged malpractice by no later than June 11, 2002. *See* Compl. ¶ 51. Therefore, the continuing-wrong doctrine does not apply.

In the alternative, Lamont asks the Court to create a public-interest exception to the relevant statutes of limitation. *See* Pl.'s Opp'n ¶¶ 54-57. However, it works no injustice on Lamont to abide by the balance struck by the applicable statutes of limitations because Lamont knew of the underlying facts long before the applicable statutes of limitation had run. For example, Lamont's repeated allegation that the United States Patent and Trademark Office "accepted as fact that 'intent to commit fraud is the listed reason'" for patent application suspensions, Pl.'s Opp'n ¶¶ 12, 15, 28, 44, 46, 62, proves only that Lamont, through his position at Iviewit, would have known about the alleged fraud no later than February 2004, which underscores the tardiness of his claims in this action. Lamont was given "what the legislature deems a reasonable time to present [his] claims," and now that the allotted time has passed, the statutes of limitations "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." *Kubrick*, 444 U.S. at 117.

Even if the Court assumed that Lamont's common-law claims were timely, those claims would still be subject to dismissal with prejudice because they fail to state a claim upon which relief can be granted. *See* Proskauer Defs.' Mem. at 20-21. For example Lamont fails to allege that he, individually, has a claim for malpractice or that a contract existed between himself and Proskauer. As already detailed with respect to Lamont's lack of standing, Lamont cannot bring a claim on behalf of Iviewit, which is effectively what he seeks to do by suing as a "nominee." *See* Pl.'s Opp'n ¶¶ 60-61.

## CONCLUSION

For the foregoing reasons and those contained in the Proskauer Defendants' opening memorandum of law, the Court should dismiss all claims asserted against the Proskauer Defendants with prejudice.

Dated: June 4, 2012                             Respectfully submitted,

                                                PROSKAUER ROSE LLP

By:     /s/ James F. Segroves           By:     /s/ Gregg M. Mashberg
    James F. Segroves                       Gregg M. Mashberg
    (D.C. Bar No. 480630)                   (admitted *pro hac vice*)
    1001 Pennsylvania Avenue, NW            11 Times Square
    Washington, DC 20004-2533               New York, NY 10036-8299
    202.416.6800                            212.969.3000
    202.416.6899 (fax)                      212.969.2900 (fax)
    jsegroves@proskauer.com                 gmashberg@proskauer.com

*Attorneys pro se for Defendant Proskauer Rose LLP*
*and Attorneys for Defendants Kenneth Rubenstein,*
*Christopher C. Wheeler, and the late Stephen C. Krane*