UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P. STEPHEN LAMONT, individually, AND AS NOMINEE FOR 100% OF THE CAPITAL SHARES OF IVIEWIT HOLDINGS, INC., <br><br>Plaintiff, <br><br>v. <br><br>PROSKAUER ROSE LLP, et al. <br><br>Defendants. | Civil Action No: <br>11-00949 (BJR) <br><br><br>REPLY |

**REPLY: DEFENDANT TIME WARNER INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

**INTRODUCTION**

1.  As stated in Plaintiffs' Amended Complaint, "In or about the fall of 1998, in Boca Raton, Fla., and at all times relevant to this Amended Complaint, inventors of a soon to be formed corporation, Zakirul A. Schirajee, Jude R. Rosario, and Eliot I. Bernstein (collectively "Inventors") stumbled upon technologies while attempting to deliver Internet video advertisements for a service company owned and operated by the Bernstein family." (See Amended Complaint ¶29).

2.  To reiterate as a foundation as it relates to the Reply, Plaintiff claims in ¶79 of the Amended Complaint that: "On January 14, 2002, in an electronic mail message, [David] Colter, [Warner Bros., a unit of Defendant TW, Vice President of Advanced Technology and Standards] transmits a message to his direct reports, a one Chuck Dages, Senior Vice President of Advanced Technology and a one Alan Bell, Executive Vice President of Advanced Technology and states: "We signed the confidentiality agreement, Iviewit revealed their processes and techniques, and we now use those techniques in encoding" (emphasis supplied) (hereinafter, "Colter Email").

3. Now, given the <u>new information</u> of not one, but two executed Confidentiality Agreements (August 14, 2000 and February 27, 2001) and supported by the Colter Email, it is difficult to discern the reasons for the Opposition to the Motion for Leave by Defendant TW. Nevertheless, Plaintiff will attempt to distinguish a few salient facts from Defendant TW counsel's difficult to comprehend Opposition papers, and spare the Court the remaining unintelligible parts. Afterwards, Plaintiffs will provide their own hypothesis as to the reason for TW's Opposition.

## BASES OF REPLY

4. TW, in its Opposition to the Motion at hand, seemingly, though Plaintiff cannot be entirely sure as such Opposition is mysteriously devoid of any real facts to support its Opposition, relies on:

    a. Claims Are Frivolous and Harassing;

    b. Plaintiff Shows Bad Faith and Undue Delay;  and

    c. Shakedown Tactics.

In Reply, Plaintiff states as follows:

5. <u>Claims Are Frivolous and Harassing</u>.

    a. Defendant TW, as it notes, has since filed its Motion to Dismiss along side of other Defendants, and, in doing so, declares "game over!"  Plaintiff asks, "Did Judge Rothstein retire as well, and someone forgot to notify Plaintiff?"

    b. It has been said that 42 U.S.C. § 1983 has become the principle statutory vehicle used to remedy constitutional violations by state and local officials, but Plaintiff claims that it has become such because there was no other remedy prior to its enactment.

c. As codified, 42 U.S.C. § 1983 states:

   i. "<u>Every person</u> who, under color of <u>any statute</u>, ordinance, <u>regulation</u>, custom, or usage, of any State or Territory or the District of Columbia, subjects, <u>or causes to be subjected, any citizen</u> of the United States or other person within the jurisdiction thereof to the <u>deprivation of any rights</u>, privileges, or immunities secured by the Constitution and laws, shall be <u>liable to the party injured in an action at law</u>, suit in equity, or other proper proceeding for redress…(emphasis supplied)".

   ii. As stated in the Amended Complaint ¶77 "Beginning in the summer of 2001, and at all times relevant to this complaint, TW, after validating the technologies in its multimedia lab in Glendale, Cal., and after the termination of strategic alliance contracts, begins to conduct the unauthorized use of technologies in direct violation of strategic alliance contracts and NDA's."

   iii. Plaintiffs maintain that the actions of TW fit squarely within the statute where, conducting such actions, Defendant TW thus "depriv[es] any rights…secured by the Constitution and laws" as to Plaintiffs.

   iv. Equally well settled is where an enacted statute is utilized for other purposes, such as is the case with 18 U.S.C. § 1961–1968 (originally enacted to prosecute organized crime, its application has been more widespread) and 18 U.S.C. § 1346 (where federal prosecutors in cases of public corruption as well as in cases in which private individuals breached a fiduciary duty to another).

6. <u>Plaintiff Shows Bad Faith and Undue Delay</u>

   a. On July 29, 2011, Judge Kennedy issued an amended order (DKT No. 24), staying the instant action pending Plaintiffs' payment of the filing fee in this case plus an additional charge ("Stay Order").

   b. In August 2011 and again on April 13, 2012, Plaintiff received assurance from the District Court Finance Department that the entire filing fee plus finance charge was paid and docketed. (See the August 17, 2011 entry, no docket number).

   c. Following along, on May 21, 2012 at approximately 3:03 P.M., this Court vacated the Stay Order and such further relief was granted.

   d. Similarly, on May 21. 2012 at approximately 4:22 P.M. Plaintiff filed the Motion for Leave to File an Amended Complaint.

   e. As the Motion here in question was filed a mere <u>seventy nine minutes</u> after the instant action was reactivated, Plaintiffs' request was timely and made in good faith.

   f. Plaintiff's timely filing still gave Defendant TW its twenty one (21) days to file a Motion to Dismiss per the Court's Order Vacating Stay; Scheduling Deadlines, and further replief which it did on June 4, 2012, thus Plaintiff's Motion does not evidence undue delay, as is alleged by Defendant TW.

   g. Plaintiff asserts the 1983 claim based on the <u>new information</u> of not one, but two executed Confidentiality Agreements and the Colter Email.

7. <u>Shakedown Tactics.</u>

   a. As stated by Defendant TW's counsel (See Opposition p.2), on April 27, 2012, Plaintiff filed a complaint in this Court, containing claims similar to the

<u>continuing violations</u> of TW in this action, styled as 2012-cv-00662 (BJR) P. Stephen Lamont, individually, and as Nominee for 100% of the Capital Shares of Iviewit Holdings, Inc. v. Rovi Corporation ("Rovi"). For the benefit of the Court, on June 6, 2012, Plaintiff filed another complaint in this Court asking it to be related to Rovi styled as 2012-cv-00??? (BJR) P. Stephen Lamont, individually, and as Nominee for 100% of the Capital Shares of Iviewit Holdings, Inc. v. Sony Corporation of America ( not yet docketed).

  a. Where TW benefits from the unauthorized use of Plaintiff's technologies in encoding of feature films of Warner Bros., encoding of television shows of TW, replication of Blu-ray and DVD discs, transmittal of Iviewit encoded video across the head ends of Time Warner Cable (hereinafter "TWC") at all times relevant to this Amended Complaint up to and until TW's spin-off of TWC, and storage and decoding of Iviewit encoded video on set top boxes provided by TWC to its end users, where rejecting the most favored nation agreements ("MFN"), TW now has amassed more than $215 million in unpaid royalties to Plaintiff;

  b. Where Rovi benefits from the unauthorized use of Plaintiff's technologies in, among other solutions, Rovi's TotalCode Enterprise, TotalCode Professional, TotalCode Studio solutions, and DIVX Plus Streaming, where rejecting an MFN, Rovi has now amassed more than $100 million in unpaid royalties to Plaintiff;

  c. Where Sony benefits from the unauthorized use of Plaintiff's technologies in, among other solutions, Sony's video on demand business of Movielink

until its sale to Blockbuster on August 8, 2007, Sony's digitizing and encoding of feature length films and other television programming, replication of Blu-ray and DVD discs, and rendering or decoding and displaying Iviewit encoded video on Sony's products including but not limited to digital TV, DVD players, personal computing devices of various sorts, and PlayStation where rejecting an MFN, Sony has now amassed more than $150 million in unpaid royalties.

    **d.** Where between TW, Rovi, and Sony amassing more than $465 million in unpaid royalties, Plaintiff asks Defendant TW's counsel "Now, who is shaking down whom?"

## PLAINTIFFS' HYPOTHESIS

8. Upon the uncovering of the <u>new information</u> contained in the Amended Complaint: executed Confidentiality Agreements dated August 14, 2000 and February 27, 2001; and, the Colter Email, such new information sent shock waves through Defendant TW's counsel from Washington, D.C. to Warner Bros. headquarters in Burbank, Cal. wherein it caught the jet stream and arrived very soon at One Time Warner Place in New York.

9. Desperately trying to distance themselves from the Colter Email, a former executive under the employ of Defendant TW and one of the top technologists in the world, where he blatantly advises his direct reports of the existence of an NDA in place, the existence of knowledge transfers and technology disclosures, and the present unauthorized use of such knowledge transfers and technology disclosures, they try to go to any lengths to block the Motion for Leave to file the Amended Complaint.

## CONCLUSION

**WHEREFORE,** for all the foregoing reasons, Plaintiff respectfully requests this Court to grant Plaintiff's Motion for Leave to File the Amended Complaint and such further relief as this Court deems appropriate.

Dated: June 6, 2012

                                                                     P.STEPHEN LAMONT, *pro se*

                                                                     /s/ P. Stephen Lamont
                                                                     926 Boston Post Road
                                                                       Rye, N.Y. 10580
                                                                       Tel.: (914) 217-0038
                                                                       p.stephen.lamont@gmail.com

**Copies To:**

Gregg M. Mashberg (via CM/ECF)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
212.969.3450
212.969.2900 (fax)
gmashberg@proskauer.com

James F. Segroves (via CM/ECF)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)
jsegroves@proskauer.com

Counsel for Defendants Proskauer Rose LLP, Kenneth Rubenstein, Christopher C. Wheeler, and the late Steven C. Krane

Paul R. Monsees (via CM/ECF)
FOLEY & LARDNER LLP
3000 K Street, NW
Suite 600
Washington, DC 20007-5109
202.672.5342
202.672.5399 (fax)
pmonsees@foley.com

Counsel for Defendant Foley & Lardner LLP

Monica A. Connell (via CM/ECF)
OFFICE OF THE ATTORNEY GENERAL
120 Broadway, 24th Floor
New York, NY 10271
212.416.8965
monica.connell@ag.ny.gov

Counsel for Defendants State of New York, Thomas J. Cahill, Martin R. Gold, Hon. Richard T. Andrias, Hon. David B. Saxe, Lawrence DiGiovanna, Diana Maxfield Kearse, and James E. Pelzer

Jared R. Butcher (via CM/ECF)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202.429.1302

202.429.3902 (fax)
jbutcher@steptoe.com

Counsel for Defendant Time Warner Inc.

Kent K. Anker (via CM/ECF)
Amy K. Penn (via CM/ECF)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
212.833.1100
212.833.1250 (fax)
kanker@fklaw.com
apenn@fklaw.com

Attorneys for Defendants Foley & Lardner LLP, William J. Dick, Douglas A. Boehm, and Steven C. Becker

Richard M. Howard (via email)
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501
516.747.0300
516.747-0653 (fax)
rhoward@meltzerlippe.com

Attorney for Meltzer, Lippe, Goldstein & Breitstone, LLP

Lewis S. Meltzer, *pro se* (via email)
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501
516.747.0300
516.747-0653 (fax)
lmeltzer@meltzerlippe.com

RAYMOND A. JOAO, *pro se* (via email)
122 Bellevue Place
Yonkers, NY 10703

**Defendants Who Have Not Yet Appeared:**

BRIAN G. UTLEY
9541 Virginia Avenue S.
Bloomington, MN 55438

MICHAEL A. REALE
5304 Ventura Drive
Delray Beach, FL 33484

RAYMOND T. HIRSCH
6212 Mershon Street # A,
Philadelphia, PA 19149

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**P. STEPHEN LAMONT, individually, AND AS NOMINEE FOR 100% OF THE CAPITAL SHARES OF IVIEWIT HOLDINGS, INC.,**

**Plaintiff,**

v.

**PROSKAUER ROSE LLP, et al.**

**Defendants.**

Civil Action No:
11-00949 (BJR)

**ORDER**

## ORDER

This matter is before the Court on Defendant Time Warner Inc.'s Opposition to Plaintiff's Motion for Leave to File a First Amended Complaint, where on June 6, 2012, Plaintiff, P. Stephen Lamont, individually, and as Nominee for 100% of the Capital Shares of Iviewit Holdings, Inc., replied to this Court to grant leave to file the Amended Complaint.

Accordingly, having considered the Motion for Leave, the Opposition, and the Reply it is hereby **ORDERED** that Plaintiffs' Motion for Leave to File an Amended Complaint is **GRANTED.** It is **FURTHER ORDERED** that, as Motion practice concludes, the parties begin settlement negotiations under the supervision of the Court.

**SO ORDERED.**

**Signed: Barbara J. Rothstein
United States Senior Judge**

DATED: _____, 2012