# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **P. STEPHEN LAMONT individually, AND AS NOMINEE FOR 100% OF THE CAPITAL SHARES OF IVIEWIT HOLDINGS, INC.,** | **DOCKET NO: 11-CV-00949 (BJR)** |
| **Plaintiff,** | |
| **-v-** | |
| **PROSKAUER ROSE LLP, et al.** | **OPPOSITION** |
| **Defendants** | |

## PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF THE FOLEY DEFENDANTS

For Plaintiff

P. Stephen Lamont, Pro Se
926 Boston Post Road
Rye, N.Y. 10580
Tel.: (914) 217-0038
Email: p.stephen.lamont@gmail.com

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................ 5

II.   OPPOSITION TO PLAINTIFF'S FEDERAL CLAIM SHOULD BE
DISMISSED BASED ON THE DOCTRINES OF *RES JUDICATA* AND
COLLATERAL ESTOPPEL................................................................ 6

   A.   PUBLIC CORRUPTION CASE ................................................................ 6
   B.   PROCEEDINGS IN PUBLIC CORRUPTION CASE. ................................. 10
   C.   CONCLUSION. ................................................................................ 12

III.   OPPOSITION TO PLAINTIFF DOES NOT HAVE STANDING TO
ASSERT ANY OF HIS CLAIMS ............................................................. 12

IV.   OPPOSITION TO ALL OF PLAINTIFF'S ADDITIONAL CLAIMS ARE
TIME-BARRED AND SHOULD BE DISMISSED.................................... 17

   A.   THE CONTINUING VIOLATIONS DOCTRINE. ....................................... 17
   B.   THE PUBLIC INTEREST........................................................................ 19

V.   OPPOSITION TO STATE LAW CLAIMS ALSO FAIL TO STATE A CLAIM
AND SHOULD BE DISMISSED............................................................. 20

VI.   OPPOSITION TO THIS COURT'S LACK OF PERSONAL
JURISDICTION OVER DEFENDANTS BOEHM AND DICK ............................... 21

VII.   OPPOSITION TO TRANSFER TO THE U.S. DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK ........................................ 24

VIII.   CONCLUSION................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Allen v. McCurry*, 449 U.S. 90, 97-98, 101 S. Ct. 411, 416-417, 66 L. Ed. 2d 308 (1980) .................................................................................................................................. 10

*Bernstein v. New York*, 591 F. Supp. 2d 448 (S.D.N.Y. 2008).......................................... 7

*Bodner v. Banque* Paribas114 F. Supp. 2d 117, 134-35 (E.D.N.Y. 2000) ...................... 17

*Christine C. Anderson v. the State of New York, et al.*, (07CV9599 S.D.N.Y., October 26, 2007) ............................................................................................................................ 7

*Colvig v. RKO General, Inc.*, 232 Cal. App. 2d 56, 42 Cal. Rptr. 473, 485 (1965) .......... 9

*Donald Gilbert Clark, Plaintiff-Appellant, v. Yosemite Community College District*, et al. 785 F. 2d 781 .............................................................................................................. 10

*Franchise Tax Bd. v. Alcan Aluminium Ltd.*,493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) ..................................................................................................... 14

*Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) .......................... 15

*Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. at 336, 110 S.Ct. 661).................. 14

*Frene v. Louisville Cement Co.*, 77 U.S. App. D.C. 129, 134 F.2d 511, 516................... 22

*Greenfield v. Mather*, 32 Cal.2d 23, 35, 194 P.2d 1, 8 (1948) ........................................ 8

*Hames v. Cravens*, 966 S.W.2d 244, 247 (Ark. 1998) .................................................... 15

*Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 76-77 (D.D.C. 2009) .............. 14

*Hight v. Hight* 67 Cal. App. 3d 498, 136 Cal. Rptr. 685 (1977)........................................ 9

*Hoery v. United States*, 64 PJd 214, 218 (Colo. 2003) ................................................... 18

*International Harvester Co. v. Kentucky*, 234 U.S. 579, 587 ........................................... 22

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................... 22

*Ivey v. Geithner*, No. 08-5478, 2009 U.S. App. LEXIS 7774, at *2 (D.C. Cir. Apr. 10, 2009) .......................................................................................................................... 12

*Jackson v. Jackson*, 253 Cal. App. 2d 1026, 62 Cal. Rptr. 121 (1967) ............................ 9

*Jewel v. United States of America* (8th Circuit, No. 08-1175, December 10, 2008, Dissenting Opinion) .................................................................................................... 14

*Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 84, 104 S. Ct. 892, 898, 79 L. Ed. 2d 56 (1984) ......................................................................................... 10

People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87................................... 22

*Piatt v. MacDougall*, 773 F. 2d 1032, 1034 (9th Cir. 1985) (en banc)) .......................... 10

*Powers v. Ohio*, 499 U.S. 400, 410 (1991) ..................................................................... 14

Rawoof v. Texor Petroleum Co.,521 F.3d 750, 757 (7th Cir.2008) .................................. 14

*Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237 (D.D.C. 2007).................................. 20

*Sawyer v. First City Financial Corp., Ltd.*, 124 Cal. App. 3d 390, 399, 177 Cal. Rptr. 398, 402-03 (1981)......................................................................................................... 9

*Stebbins v. Nationwide Mutual Ins. Co.*, 528 F.2d 934 (4th Cir. 1975)........................... 10

*White v. Bloom*, 621 F.2d 276, 280-81 (8th Cir. 1980)................................................... 18

## Regulations

C.F.R. 1.103 ............................................................................................................... 6

D.C. Code § 12-301(8) ............................................................................................... 18

D.C. Code § 13-423 .................................................................................................... 23

## Statutes

35 U.S.C. 271 ............................................................................................................. 16

Securities Act of 1934 ................................................................................................ 13

U.S.C. Title 35 ........................................................................................................... 20

## Treatises

C. Wright, Law of Federal Courts Sec. 100A ............................................................. 9

Restatement (Second) of Conflict of Laws § 115, Comment a, Comment e (1971) ......... 9

Restatement (Second) of Judgments Sec. 20 .............................................................. 9

The Continuing Violations Doctrine, Kyle Graham (43 Gonz. L. Rev. 273 2007-2008)  17

## Other Authorities

Bower, Joseph L. & Christensen, Clayton M. (1995). *Disruptive Technologies: Catching the Wave* Harvard Business Review, January–February 1995 ...................................... 19

# I.       PRELIMINARY STATEMENT

**1.**      The Foley Defendants are comprised of: a one William J. Dick (hereinafter, "Dick") who at all times relevant to this Complaint was Of Counsel to Foley and failed to properly supervise the intellectual property patent prosecution attorneys handling Plaintiff's technologies; a one Douglas A. Boehm (hereinafter "Boehm"), who at all times relevant to this Complaint was a partner of Foley and had a direct hand in improperly filing Plaintiff's patent applications as a means to protect the Proskauer Defendants, the Meltzer Defendants, and MPEG LA, LLC (hereinafter, "MPEG") as benefactor of Iviewit's technologies; a one Steven C. Becker (hereinafter "Becker"), who at all times relevant to this Complaint was an associate at Foley and had a direct hand in improperly filing Plaintiff's patent applications as a means to protect the Proskauer Defendants, the Meltzer Defendants, and MPEG as benefactor of Plaintiff's technologies; and Foley Lardner LLP (hereinafter "Foley"), which at all times relevant to this Complaint failed to properly supervise its intellectual property patent prosecution attorneys handling Plaintiff's technologies.

**2.**      Additionally, the Foley Defendants spin a lot of inaccurate statements surrounding the captioning of the instant action, going so far as to claim that "Lamont does not have standing to bring the present action because he cannot, as a pro se plaintiff, bring a claim to remedy the injury of another individual or entity.…[1]"

**3.**      As to individuals, according to the Foley Defendants, Plaintiff maintain that the caption clearly indicates that Lamont sues, individually, and as nominee of the <u>capital shares</u> of Iviewit, not Iviewit itself.

---

[1] See 1:11-00949-(BJR) *Lamont, et al. v. Proskauer Rose, LLP, et al.* Foley Defendants' Motion to Dismiss at 13.

**4.**     Plaintiff suffices to say that Iviewit is comprised of some eighty five prominent shareholders, <u>including the United States of America</u>, where all eighty five have transferred their holdings to Lamont for purposes of the instant action where he acts as their Nominee, and not on behalf of the shareholders themselves, but on <u>behalf of their shareholdings</u>.

**5.**     As to an entity, and should Plaintiff's status as Nominee not be persuasive to the Court, it shall be seen by Section III Opposition to Plaintiff Does Not Have Standing to Assert Any of His Claims that Plaintiff has a <u>direct, personal interest</u> in such claims.

**6.**     Finally, Plaintiff remind the Court that <u>the United States Patent and Trademark Office ("USPTO") accepted as fact</u> that "intent to commit fraud is the listed reason" for patent application suspensions in various rulings from March 10, 2004 and continuing to April 19, 2004, where the USPTO states "The request for deferral/suspension of action under C.F.R. 1.103 has been approved," and other words to that effect[2].

## II.   OPPOSITION TO PLAINTIFF'S FEDERAL CLAIM SHOULD BE DISMISSED BASED ON THE DOCTRINES OF *RES JUDICATA* AND COLLATERAL ESTOPPEL

### A.   Public Corruption Case

**7.**     As plainly stated in the Complaint, the founder of Iviewit Holdings, Inc. (hereinafter "Iviewit"), Eliot I. Bernstein, filed an action in the United States District Court for the Southern District of New York, *Bernstein v. New York*, 591 F. Supp. 2d 448 (S.D.N.Y. 2008) ("Public Corruption Case").

**8.**     The District Court Judge marked the Public Corruption Case related to *Christine C. Anderson v. the State of New York, et al.*, (07CV9599 S.D.N.Y., October 26, 2007) ("Anderson") where such case involved claims of "white washing" of grievance

---

[2] 1:11-00949-HHK *Lamont, et al. v. Proskauer Rose, LLP, et al.*, filed May 19, 2011 at par. 59.

complaints at the New York State Supreme Court Appellate Division First Department Departmental Disciplinary Committee ("1st DDC"), wrongful termination, retaliation, and discrimination.  Some six other cases were commenced with similar claims, in part, and, as such, were marked as related to *Anderson* by the District Court Judge.

9.      Plaintiff Lamont maintains that he was not an individual litigant in the Public Corruption Case.  Plaintiff Lamont maintains that he acted on behalf of the shareholders of Iviewit and filed the original complaint, motions, oppositions, motions for reconsideration, appeals, and appellant briefs, solely as a party acting on the behalf of Iviewit shareholders.

10.     Plaintiff Lamont further maintains that he was not a party to the amended complaint in the Public Corruption Case.  Plaintiff Lamont neither drafted such pleading, made no comment on its contents, was not involved in the insertion of new defendants, and such pleading does not contain the original signature of P. Stephen Lamont; what it does contain, however, are a series of signatures that Plaintiff Lamont had supplied to Iviewit's founder, Eliot I. Bernstein (hereinafter "Bernstein"), who saw fit to affix such signatures on the pleading in the Public Corruption Case, without Lamont's authorization.

11.     As noted in the Foley Defendants' Motion to Dismiss, the District Court dismissed the Public Corruption Case on August 8, 2008 along with the six other cases to which it was related, with all claiming "white washing" of grievance complaints at the 1st DDC and New York's Commission on Judicial Conduct; Plaintiff and/or Iviewit had no issues with the latter.

**12.** On appeal since September 2008, the United States Court of Appeals for the Second Circuit dismissed the appeal on January 22, 2010. What the Foley Defendants fail to disclose to the Court is the patently absurd motion filed by Bernstein earlier that month demanding a series of forms of relief, which if not granted would subject the panel to the filing of criminal complaints by Bernstein. The motion was never docketed, but the Court noted that "Appellant Bernstein, pro se, move (sic) to compel the appointment of counsel and for extensive relief."

**13.** Accordingly, where the Foley Defendants attempts to liken the instant action, claims of violations of 42 U.S.C. §1983 and supplementary claims, among others, of, fraud and conspiracy to commit fraud, under the claims of *res judicata* and collateral estoppel with the Public Corruption Case, where related to Anderson involving claims of "white washing" of grievance complaints at the 1st DDC, wrongful termination, retaliation, and discrimination, such argument is absurd and must fail.

**14.** In *Greenfield v. Mather*, 32 Cal.2d 23, 35, 194 P.2d 1, 8 (1948), the California court stated that in some cases the doctrine of res judicata "will not be applied so rigidly as to defeat the ends of justice or important considerations of policy." (See also *Jackson v. Jackson*, 253 Cal. App. 2d 1026, 62 Cal. Rptr. 121 (1967), *Hight v. Hight* 67 Cal. App. 3d 498, 136 Cal. Rptr. 685 (1977), *Sawyer v. First City Financial Corp., Ltd.*, 124 Cal. App. 3d 390, 399, 177 Cal. Rptr. 398, 402-03 (1981) where "the question is whether…federal litigation involves the same 'cause of action,' conceived of as the remedial right for the violation of one 'primary right…' a 'primary right' is best defined as the 'right to be free from the particular unlawful conduct,'" and *Colvig v. RKO General, Inc.*, 232 Cal. App. 2d 56, 42 Cal. Rptr. 473, 485 (1965) where "other facts or

8

conditions intervene, forming a new basis for a claim, the issues are no longer the same and *res judicata* does not apply.")

**15.**     In the literature, see Restatement (Second) of Conflict of Laws § 115, Comment a, Comment e (1971) that states in keeping with the general American rule favoring equitable relief from *res judicata* in cases in which "a party was deprived of an opportunity adequately to present his claim or defense," (such as the lack of a discovery phase in the Public Corruption Case) C. Wright, Law of Federal Courts Sec. 100A, at 680-81 (1983) where it is stated that and "[a]lthough it is commonly said that a judgment has preclusive effect only if it is 'on the merits,' an opportunity to reach the merits is sufficient to invoke a preclusive effect," (no opportunity to reach the merits in the Public Corruption Case) and Restatement (Second) of Judgments Sec. 20 where the exceptions to the claim preclusion rule are stated as: three factors must be present: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the claims or causes of action in the two suits (civil racketeering in the Public Corruption Case versus 42 USC §1983 in the instant action); and, (3) a final judgment on the merits in a court of competent jurisdiction. In the instant action, as the Court shall see below, only the first factor, in part, is at issue.

**16.**     In the Federal forum, see *Donald Gilbert Clark, Plaintiff-Appellant, v. Yosemite Community College District*, et al. 785 F. 2d 781("Clark") that states "Consequently, the doctrine of *res judicata* does not preclude Clark from maintaining his section 1983 action with regard to events and conduct which have occurred since the date of the state court judgment," (See also *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 84, 104 S. Ct. 892, 898, 79 L. Ed. 2d 56 (1984), *Allen v. McCurry*, 449 U.S. 90, 97-98,

101 S. Ct. 411, 416-417, 66 L. Ed. 2d 308 (1980), and *Piatt v. MacDougall*, 773 F. 2d

1032, 1034 (9th Cir. 1985) (en banc)).  Additionally, *Stebbins v. Nationwide Mutual Ins.*

*Co.*, 528 F.2d 934 (4th Cir. 1975), found that a dismissal for failure to comply with the

statutory time limit for bringing a… suit did not represent an adjudication "on the merits"

for *res judicata* purposes (<u>PRECISELY ONE OF THE CIRCUMSTANCES OF THE</u>

<u>INSTANT ACTION</u>).

**B.       Proceedings in Public Corruption Case.**

**17.**     Subsequently, in the Public Corruption Case, the only individual plaintiff,

Bernstein, filed an amended complaint on May 9, 2008, inserting, numerous new

defendants in general, and IBM Corporation and Intel Corporation in particular (alleging

breach of contracts).

**18.**     Unfortunately, and even if the Foley Defendants' *res judicata* and collateral

estoppel claims are persuasive as to Plaintiff Lamont, in her 2008 Financial Disclosure

Forms, the District Court Judge, Hon. Shira A. Scheindlin, presiding over the

proceedings, was a shareholder in IBM Corporation and Intel Corporation, defendants in

Bernstein's amended complaint, and failed to remove herself.  Notwithstanding her sale

of Intel Corporation on May 5, 2008, information from a Vice President of Settlements at

a major bank indicates that Judge Scheindlin was still a constructive owner of shares of

Intel Corporation, and as a shareholder of record on May 9, 2008 entitled to a cash

payment of Intel dividends on its next quarterly payment date; Judge Scheindlin remained

a shareholder of defendant IBM Corporation throughout the remainder of 2008, and up

until December 23, 2008, and thus was such a holder at the time of the dismissal of the

complaint in the Opinion and Order of August 8, 2008, and entitled to a cash payment of IBM dividends on the ensuing quarterly payments dates.

19.     May it please the Court, the above revelations are not an "attack" on Judge Scheindlin, as the several Defendants in general, and the Foley Defendants in particular would like to phrase.  It is just a fact of the matters.

20.     On appeal, and even if the Foley Defendants' *res judicata* and collateral estoppel claims are persuasive as to Plaintiff Lamont, Richard C. Wesley, Circuit Court Judge for the United States Court of Appeals for the Second Circuit as a retired judge for the New York State Court of Appeals, sat on the panel in *Bernstein*, where according to his Financial Disclosure Forms, factually, receives a pension from the State of New York, a Defendant-Appellee in the Public Corruption Case.

21.     Accordingly, where a District Court Judge is the constructive owner of shareholdings in Defendants in a case in which she is presiding, and failed to remove herself, there is no *res judicata* and collateral estoppel.

22.     Similarly, where a Circuit Court Judge receives a pension from a Defendant-Appellee in a case in which he is presiding, and failed to remove himself, there is no *res judicata* and collateral estoppel.

23.     Accordingly, and even if the Foley Defendants' *res judicata* and collateral estoppel claims are persuasive as to Plaintiff Lamont, where the Foley Defendants attempts to liken the instant action, claims of violations of 42 U.S.C. §1983 and supplementary claims, among others, of fraud and conspiracy to commit fraud, to the Public Corruption Case under the claims of *res judicata* and collateral estoppel, and where a District Court Judge and a Circuit Court Judge receive cash entitlements

(dividends and pension) from Defendants and Defendants-Appellees in a case in which they are presiding over and fail to remove themselves, such argument must fail.

**C.    Conclusion.**

**24.**    To close, and even if the Foley Defendants' *res judicata* and collateral estoppel claims are persuasive as to Plaintiff Lamont, as the Foley Defendants correctly portray, "Lamont is not an attorney, he may not bring an action on behalf of any party but himself[3]" (see *Ivey v. Geithner*, No. 08-5478, 2009 U.S. App. LEXIS 7774, at *2 (D.C. Cir. Apr. 10, 2009).  As such, his involvement in the Public Corruption Case, as the Foley Defendants' allege, as representative is <u>error</u> at best, in <u>diametric opposition to established case law</u> at middling, and <u>fantasy</u> at worst.  **NO LEAVE OR OTHER MOVING PAPERS WERE EVER PRESENTED TO INSERT PLAINTIFF AS AN INDIVIDUAL LITIGANT IN THE PUBLIC CORRUPTION CASE.**

**25.**    Lastly, Plaintiff remind the Court that <u>USPTO accepted as fact</u> that "intent to commit fraud is the listed reason" for patent application suspensions in various rulings from March 10, 2004 and continuing to April 19, 2004, where the USPTO states "The request for deferral/suspension of action under C.F.R. 1.103 has been approved," and other words to that effect[4].

**III.    <u>OPPOSITION TO PLAINTIFF DOES NOT HAVE STANDING TO ASSERT ANY OF HIS CLAIMS</u>**

**26.**    As stated above, Iviewit is comprised of some eighty five prominent shareholders, <u>including the United States of America</u>, where all eighty five have transferred their

---

[3] Memorandum of Points and Authorities in Support of the Foley Defendants' Motion to Dismiss the Complaint at 13.
[4] Ibid at 2.

holdings to Lamont for purposes of the instant action where he acts as their Nominee, and not on behalf of the shareholders themselves, but on <u>behalf of their shareholdings</u>.

27.    The definition of "Nominee," in the spirit of Title 15, Chapter 2B, more commonly known as the Securities Act of 1934, is "A person or firm into whose name securities or other properties are transferred in order to facilitate transactions…"  In effect, as of the filing date, May 19, 2011, Plaintiff "owned" 100% of Iviewit Holdings, Inc.

28.    Further, if the role as Nominee is not persuasive as to the standing of Lamont, Plaintiff maintains that in a Corporate Resolution dated April 1, 2011 it was RESOLVED that on April 21, 2011 all Confidentiality Agreements, retainer agreements, and contracts of any shape or form from any Iviewit entity were assigned to holders of the capital shares of Iviewit Holdings, Inc., thereby giving Plaintiff, individually, and as Nominee a <u>direct, personal interest</u> in the claims of the instant action.

29.    On April 29, 2011, an Assignment and Assumption Agreement was executed assigning contracts from various Iviewit entities to the shareholders of Iviewit Holdings, Inc.

30.    In *Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 76-77 (D.D.C. 2009), the Court stated: "Thus, the rule does not apply where shareholders with a 'direct, personal interest' in the cause of action bring suit, even if 'the corporation's rights are also implicated,' because the shareholders are suing to enforce their own rights, not the corporation's." (See also *Franchise Tax Bd. v. Alcan Aluminium Ltd.*,493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990), *Rawoof v. Texor Petroleum Co.*,521 F.3d 750,

757 (7th Cir.2008), *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. at 336, 110 S.Ct. 661).

**31.**     In *Jewel v. United States of America* (8th Circuit, No. 08-1175, December 10, 2008, Dissenting Opinion) Circuit Judge Riley wrote:

> "…limits of standing generally require Plaintiff to demonstrate they are asserting their own rights, and not the rights of a third party…This is equally true with respect to suits by corporate officers and shareholders…Equitable restrictions prohibit shareholders from bringing suit solely to enforce the rights of a corporation or to recover for injuries sustained by the corporation…What the majority fails to embrace is Jewell's claim falls squarely within a recognized exception to this equitable restriction. This exception permits "a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated"…Arkansas courts have repeatedly held a shareholder may bring a direct suit against a third party where the shareholder asserts a direct injury which is separate and distinct from the harm caused to the corporation. (See *Powers v. Ohio*, 499 U.S. 400, 410 (1991), *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990), *Hames v. Cravens*, 966 S.W.2d 244, 247 (Ark. 1998)).

**32.**     Plaintiff suffices to say that Iviewit is comprised of some eighty five prominent shareholders, including the United States of America, where all eighty five have transferred their holdings to Lamont and RESOLVED to take assignment of all contracts for purposes of the instant action and others.

**33.**     As plainly stated in the Complaint, "Plaintiff has been caused to suffer: more than twelve (12) years of unpaid royalties on the technologies by numerous unauthorized encoders, unauthorized transmitters, and unauthorized rendering/decoding device manufacturers; unissued patents on the technologies; and loss of value in the capital shares held by shareholders." (see Complaint ¶ 79)

**34.**     By an Employment Agreement dated 2001, as Amended, Plaintiff is the owner of a significant percentage of the capital shares of Iviewit Holdings, Inc., and has suffered in the same way and the same form as the other eighty four shareholders, <u>including the United States of America</u>, all of which have transferred their shares to Plaintiff to act as their Nominee and RESOLVED to take assignment of all contracts for purposes of the instant action and others. The sole assets underlying these shares are United States Patent No's: 09/630,939, 09/522,721, 09/587,734, 09/587,026, 09/587,730, among others, and their international counterparts, the majority of which were fraudulently filed by the Foley Defendants by "… changing inventors, changing titles of applications, and inserting Defendant Utley as if he were an inventor; it is a provision of the Patent Act that failing to list true inventors may automatically invalidate an issued patent." (See Complaint ¶ 43)

**35.**     To make matters even worse, at even date below, on the balance sheet of Iviewit Holdings, Inc., as of the week ended June 9, 2012, Plaintiff is the payee of a short term note payable in the amount of Three Million, One Hundred and Twenty Nine Thousand, Sixteen Dollars and Sixty Cents ($3,129,016.60) where fraudulent patents, as a result of the actions of the Foley Defendants, have no hope of generating royalty income to remit to Plaintiff.

**36.**     May it please the Court, the Foley Defendants in their Motion to Dismiss go to great lengths in trying to distance themselves from the plain facts of paragraph 33 above and make no mention of it, lest no defense; however, the discovery phase of these proceedings will clearly show how futile their defense is.  Similarly, since the Foley Defendants are not novices at patent prosecution, then how did the circumstances of "… changing inventors, changing titles of applications, and inserting Defendant Utley as if he were an inventor" (See Complaint ¶43) come to pass where only the discovery phase will indicate.

**37.**     Where can be seen by the Foley Defendants' Motion to Dismiss[5] where they cite *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338-1343 (Fed. Cir. 2007) that states "The law is clear that, to enforce any right with respect to a patent or potential patent, a plaintiff must have a legal interest in the technology," their argument is a valiant attempt at persuasive, circular reasoning.  There is no 35 U.S.C. 271 claim here, where in light of the actions of the Foley Defendants, Plaintiff has little or no chance of ever entering that phase of business, but this is a cut and dried case of Patent Fraud and Conspiracy to Commit Patent Fraud under the auspices of 42 U.S.C. §1983, claims of which surround circumstances in fraudulently <u>filing</u> aforementioned patent applications, and <u>not enforcement of the patent applications themselves</u>.

**38.**     Lastly, Plaintiff remind the Court that <u>USPTO accepted as **FACT**</u> that "**INTENT TO COMMIT FRAUD IS THE LISTED REASON**" (emphasis supplied) for patent application suspensions in various rulings from March 10, 2004 and continuing to April

---

[5] Ibid at 1.

19, 2004, where the USPTO states "The request for deferral/suspension of action under C.F.R. 1.103 has been approved," and other words to that effect[6].

**39.**    Accordingly, as the USPTO states in not so many words, "somebody committed fraud", so who was it but those Foley Defendants, among others, who prosecuted the patent applications and those Foley Defendants, among others, under a duty to properly supervise, and did not.

## IV.    OPPOSITION TO ALL OF PLAINTIFF'S ADDITIONAL CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED

### A.    The Continuing Violations Doctrine.

**40.**    As this Court knows, the basic theory behind the continuing violations doctrine is deceptively easy to explain: In some situations, continuing misconduct by a defendant or groups of defendants will justify the aggregation or parsing of its misbehavior, with the effect of rescuing a plaintiff's claim or claims from the statute of limitations[7].

**41.**    One of the leading cases under this principle is *Bodner v. Banque Paribas*114 F. Supp. 2d 117, 134-35 (E.D.N.Y. 2000) where the *Bodner* court determined that "if the Plaintiff' allegations were true, the statute of limitations had not yet even begun to run on their claims.   Instead, the defendants' allegedly ongoing refusal to return the Plaintiff' property would represent a 'continuing violation' of…law that persisted up through the time of suit." (emphasis supplied) (See also *White v. Bloom*, 621 F.2d 276, 280-81 (8th Cir. 1980) determining that a conspiracy to violate civil rights is a continuing violation that accrues for limitations purposes upon the final act in furtherance of the conspiracy; *Hoery v. United States*, 64 PJd 214, 218 (Colo. 2003) holding that, as a general matter, a new trespass claim arises with each day's continuance of an existing trespass).

---

[6] Ibid at 2.
[7] See The Continuing Violations Doctrine, Kyle Graham (43 Gonz. L. Rev. 273 2007-2008)

**42.**     Fast forwarding through the fraudulent patent applications filed by the Proskauer

Defendants and Defendants Raymond A. Joao and Meltzer Lippe Goldstein & Breitstone

LLP and Lewis S. Meltzer, the fraudulent patent applications filed by the Foley

Defendants, and the actionable, under 42 U.S.C. §1983, methods of the New York State

Defendants, where the State Defendants find themselves making dispositions and ruling

on motions while they are Defendants-Appellees in the Public Corruption Case.

**43.**     Literally, Plaintiff states it as the Proskauer Defendants to Defendant Raymond

Joao improperly supervised by Defendant Meltzer Lippe Goldstein & Breitstone LLP and

Defendant Lewis S. Meltzer to the Foley Defendants to the New York State Defendants

that constitute <u>continuous violations</u> of 42 U.S.C. §1983 and supplementary claims to

protect the politically connected franchise of the Proskauer Defendants, its reckless

member Defendant Rubenstein, and, among others, the Foley Defendants to preserve and

protect a profitable client, MPEG (see Complaint ¶ 76).

**44.**     Similar to the Federal forum, these continuing violations apply to D.C. Code § 12-
301(8).

**45.**     As such, Plaintiff in the instant action have filed their Complaint within the three

year statute of limitations, May 19, 2011 versus Defendant Martin R. Gold's continuing

violations and disposition on January 27, 2009 and Defendants' Andrias and Saxe

continuing violation and ruling on May 13, 2009, in response to Plaintiff's Motion to

Begin the Immediate Investigation of Thomas J. Cahill in the New York State Supreme

Court Appellate Division First Department, while they were Respondents in the Public

Corruption Case.

**46.**     Why? Plaintiff emphasize, may it please the Court, that the inventions are "disruptive technologies" (See Complaint ¶ 5 for a description of the technologies) where a "disruptive technology…" is an innovation that helps create a new market and value network (Iviewit), and eventually goes on to disrupt an existing market and value network…displacing an earlier technology there (Defendant Rubenstein's MPEG)[8].

**47.**     Where, were it not for the fraudulent patent applications, Plaintiff's video and imaging techniques with their far superior value propositions, would have rendered the MPEG patent pool as a clinking, clanking, calamity of some now 800 or more patents.

**B.     The Public Interest**

**48.**     As a matter of law, the public interest is a defense against certain lawsuits as well as an exemption from certain laws or regulations (in this instance, statues of limitations).

**49.**     The public interest acts as an exception to the statues of limitations, especially in cases alleging conspiracy (in the instant action, conspiracy to commit patent fraud), wherein the statute should not run until enough evidence has been ascertained that the actions of the defendants have become sufficiently evident.

**50.**     Otherwise, such running of the statute of limitations would be contrary to the public interest and aggrieved parties will not be given their day in court, and where offenders can hide behind the statute of limitations and contain their conspiratorial activities until the statute of limitations has run.

**51.**     Accordingly, the motives of the Defendant Rubenstein, Defendants Joao and MLG and Meltzer, the Foley Defendants, and the New York State Defendants acting as a block to the technologies can be best described in *Seattle Box Co. v. Industrial Crating*

---

[8] See Bower, Joseph L. & Christensen, Clayton M. (1995). *Disruptive Technologies: Catching the Wave* Harvard Business Review, January–February 1995

*and Packing, Inc.* 756 F.2d. 1574 (Fed. Cir.1985) ("*Seattle Box"*) where the court stated, "The underlying rationale…is that the public has the right to use what the patentee does not specifically claim in her original patent.  Although recapture through a reissue patent of what the patentee dedicates to the public by omission is permissible under specific conditions, it is not permissible at the expense of innocent parties."

**52.**     *Seattle Box,* therefore, supports the claims that provisions of the Patent Act would block Plaintiff from adding new, correct subject matter in future patent prosecution.

**53.**     Most importantly, Plaintiff maintain that in a review of published evidence and corporate case studies exploring the evidence linking innovation, intellectual property, competitiveness, and economic growth, all are increased by an "honest" patent system free from the actions of the Foley Defendants.

## V.     OPPOSITION TO STATE LAW CLAIMS ALSO FAIL TO STATE A CLAIM AND SHOULD BE DISMISSED

**54.**     In the instant action, Plaintiff filed the Complaint where in paragraphs 32 to 79, contains allegations of the essential elements of fraud and conspiracy to commit fraud with specificity.  The circumstances of fraud are detailed with particularity, specifically the time, place and content of the misrepresentations. In *Richards v. Duke Univ*., 480 F. Supp. 2d 222, 237 (D.D.C. 2007) ("*Richards*") the court stated ("[A] plaintiff must make a prima facie showing of (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken by [plaintiff] in reliance upon [that] representation, (6) which consequently resulted in provable damages.").

**55.**     Following *Richards,* Plaintiff state:

      a.     a false representation: See Complaint ¶¶ 42, 43, 44, 46, 76, among others;

b.   reference to a material fact: See Complaint ¶¶ 42, 43, 44, 45, 46, 58, 59, 76, among others;

c.   made with knowledge of its falsity: See Complaint ¶¶ 43, 44, 46, among others;

d.   with intent to deceive: See Complaint ¶¶ 43, 44, 46, among others;

e.   action taken by [plaintiff] in reliance upon [that] representation: See Complaint ¶¶ 37, 47, among others[9];

f.   which consequently resulted in provable damages: See Complaint ¶79, among others.

**56.**   Finally, Plaintiff remind the Court that <u>the USPTO accepted as fact</u> that "intent to commit fraud is the listed reason" for patent application suspensions in various rulings from March 10, 2004 and continuing to April 19, 2004, where the USPTO states "The request for deferral/suspension of action under C.F.R. 1.103 has been approved," and other words to that effect[10].

## VI.   OPPOSITION TO THIS COURT'S LACK OF PERSONAL JURISDICTION OVER DEFENDANTS BOEHM AND DICK

**57.**   In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) the court said "a state may exercise personal jurisdiction over an out-of-state defendant, so long as that defendant has "<u>sufficient minimum contacts</u>" with the forum state, from which the complaint arises…" (See also *International Harvester Co. v. Kentucky*, 234 U.S. 579,

---

[9] Plaintiff states that in addition to Time Warner, Inc. ("TW"), confidentiality agreements were executed with approximately 499 other potential customers.  Plaintiff's discussions with, including Warner Bros. (a unit of TW), Thomson S.A., Intel Corporation, and Cisco Systems, Inc. were all stalled due to the patent fraud.

[10] Ibid at 2.

587; *People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 87; *Frene v. Louisville Cement Co.*, 77 U.S. App. D.C. 129, 134 F.2d 511, 516).

**58.**     Where Defendants Dick and Boehm's practice, at all times relevant to this Complaint, consists solely of filing of patent applications on behalf of inventors, prosecuting patent applications on behalf of inventors, and participating in administrative appeals and other proceedings before the USPTO examiners and boards under the umbrella of the Department of Commerce, they have "sufficient minimum contacts" according to *International Shoe* and are especially tied to the jurisdiction of this Court.

**59.**     Specifically, their practices help clients protect and enforce their intellectual property at the USPTO under the umbrella of the Department of Commerce, with a focus on patents, and in doing so they have "sufficient minimum contacts" according to *International Shoe* and are especially tied to the jurisdiction of this Court.

**60.**     Their practices, at all times relevant to this Complaint, includes patent prosecution, strategic planning and portfolio management, design arounds, brainstorming sessions, pre-litigation enforcement and defense, licensing matters, and non-infringement/invalidity studies, all with a view towards interfacing with the USPTO under the umbrella of the Department of Commerce, and in doing so they have "sufficient minimum contacts" according to *International Shoe* and are especially tied to the jurisdiction of this Court.

**61.**     Mostly importantly, when Plaintiff's first non-provisional patent application arrived at the Department of Commerce's agency, USPTO, bearing the signature of Boehm under power of attorney, they have "sufficient minimum contacts" according to

*International Shoe* and are especially tied to the jurisdiction of this Court; Dick was under a duty to supervise.

**62.**    As can be plainly see, Plaintiff's claim meet the requirements under D.C. Code § 13-423 in that:

a.   When filing the fraudulent patent applications, Boehm transacted business in the District of Columbia's Department of Commerce and its progeny agency, the USPTO;

b.   When retained by Plaintiff, Boehm contracted to supply services in the District of Columbia;

c.   When Boehm "… changing inventors, changing titles of applications, and inserting Defendant Utley as if he were an inventor" (See Complaint ¶43), Boehm caused tortuous injury in the District of Columbia's Department of Commerce and its progeny agency, the USPTO;

d.   When Boehm's entire livelihood is spent prosecuting patents, he, in the case of Plaintiff, causes tortuous injury in the District of Columbia's Department of Commerce and its progeny agency, the USPTO by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia's Department of Commerce and its progeny agency, the USPTO.

e.   Where in subparagraphs a. to d. above, Dick had a duty to supervise the actions and inactions of Boehm.

**63.**     Finally, United States Patent and Trademark Office ("USPTO") and its more than 9,000 employees, where both Dick and Boehm are members of it esteemed bar, is a government agency under the umbrella of the U.S. Department of Commerce located at 1401 Constitution Ave., NW, Washington, D.C. 20230 approximately <u>4,800 FEET</u> from the District Court, where the USPTO's location in Virginia has no especially relevant relationship with only Virginia, but just for the sake of suitability of premises to house its large operations and staff.

**64.**     Plaintiff remind the Court that the <u>USPTO accepted as fact</u> that "intent to commit fraud is the listed reason" for patent application suspensions in various rulings from March 10, 2004 and continuing to April 19, 2004, where the USPTO states "The request for deferral/suspension of action under C.F.R. 1.103 has been approved," and other words to that effect[11].

## VII.   OPPOSITION TO TRANSFER TO THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**65.**     As stated above, and not in an "attack," but where District Court Judge Scheindlin is the constructive owner and de facto owner of shareholdings in Defendants in a case in which she is presiding, and failed to remove herself, it would be prejudicial to Plaintiff to transfer the instant action.

**66.**     Similarly, where Circuit Court Judge Wesley receives a pension from a Defendant-Appellee in a case in which he is presiding, and failed to remove himself, it would be prejudicial to Plaintiff to transfer the instant action.

---

[11] Ibid at 2.

**67.**     Following along, where a District Court Judge and a Circuit Court Judge receive cash entitlements (dividends and pension) from Defendants and Defendants-Appellees in a case in which they are presiding, and fail to remove themselves, it would be prejudicial to Plaintiff to transfer the instant action.

## VIII.   **CONCLUSION**

**68.**     For the foregoing reasons, Plaintiff respectfully requests this Court to issue an order denying the Motion to Dismiss the Complaint by the Foley Defendants, issue a Scheduling Order for Discovery in the instant action, issue an Order for the parties to enter into settlement negotiations under the supervision of this Court, and granting such other and further relief as the Court deems appropriate.

For Plaintiff

P. Stephen Lamont, Pro Se
926 Boston Post Road
Rye, N.Y. 10580
Tel.: (914) 217-0038
Email: p.stephen.lamont@gmail.com

By:   /s/ P. Stephen Lamont
P. Stephen Lamont

25

**Copies To:**

Gregg M. Mashberg (via CM/ECF)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
212.969.3450
212.969.2900 (fax)
gmashberg@proskauer.com

James F. Segroves (via CM/ECF)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)
jsegroves@proskauer.com

Counsel for Defendants Proskauer Rose
LLP, Kenneth Rubenstein, Christopher C.
Wheeler, and the late Steven C. Krane

Paul R. Monsees (via CM/ECF)
FOLEY & LARDNER LLP
3000 K Street, NW
Suite 600
Washington, DC 20007-5109
202.672.5342
202.672.5399 (fax)
pmonsees@foley.com

Counsel for Defendant
Foley & Lardner LLP

Monica A. Connell (via CM/ECF)
OFFICE OF THE ATTORNEY GENERAL
120 Broadway, 24th Floor
New York, NY 10271
212.416.8965
monica.connell@ag.ny.gov

Counsel for Defendants State of New York,
Thomas J. Cahill, Martin R. Gold, Hon.
Richard T. Andrias, Hon. David B. Saxe,
Lawrence DiGiovanna, Diana Maxfield

Kearse, and James E. Pelzer

Jared R. Butcher (via CM/ECF)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202.429.1302
202.429.3902 (fax)
jbutcher@steptoe.com

Counsel for Defendant
Time Warner, Inc.

Kent K. Anker (via CM/ECF)
Amy K. Penn (via CM/ECF)
FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
7 Times Square
New York, NY 10036-6516
212.833.1100
212.833.1250 (fax)
kanker@fklaw.com
apenn@fklaw.com

Attorneys for Defendants Foley &
Lardner LLP, William J. Dick, Douglas A.
Boehm, and Steven C. Becker

Richard M. Howard (via email)
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501
516.747.0300
516.747-0653 (fax)
rhoward@meltzerlippe.com
Attorney for Meltzer, Lippe, Goldstein & Breitstone, LLP

Lewis S. Meltzer, Pro Se (via email)
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501
516.747.0300
516.747-0653 (fax)
lmeltzer@meltzerlippe.com

RAYMOND A. JOAO (via email)

122 Bellevue Place
Yonkers, NY 10703

**Defendants Who Have Not Yet Appeared:**

BRIAN G. UTLEY
9541 Virginia Avenue S.
Bloomington, MN 55438

MICHAEL A. REALE
5304 Ventura Drive
Delray Beach, FL 33484

RAYMOND T. HIRSCH
6212 Mershon Street # A,
Philadelphia, PA 19149

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **P. STEPHEN LAMONT individually, AND AS NOMINEE FOR 100% OF THE CAPITAL SHARES OF IVIEWIT HOLDINGS, INC.,** | **DOCKET NO: 11-CV-00949 (BJR)** |
| **Plaintiff,** | |
| **-v-** | |
| **PROSKAUER ROSE LLP, et al.** | |
| Defendants | |

## ORDER

With the Court having considered the Motion to Dismiss by the Foley Defendants and the Court having considered Plaintiff's Opposition to Defendants' Motion, it is hereby **ORDERED** that the motion by the defendant is **DENIED**. It is **FURTHER ORDERED** that the parties submit to Discovery no later than _____, 2012, and directly thereafter it is **FURTHER ORDERED** that the parties communicate and enter into settlement discussions under the supervision of this Court.

**SO ORDERED** this __ Day of ___, 2012.

_____
By: Barbara J. Rothstein
United States Senior Judge