UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

P. STEPHEN LAMONT,

             Plaintiff,

    v.

PROSKAUER ROSE, LLP, *et al.*,

             Defendant.

Civil Action No. 11-0949 (BJR)

MEMORANDUM OPINION

**DENYING PLAINTIFF'S MOTION TO DISQUALIFY THE REPRESENTATIVE CAPACITY OF NEW YORK STATE ATTORNEY GENERAL; GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT; DENYING PLAINTIFF'S MOTION TO AMEND HIS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT; DENYING AS MOOT PLAINTIFF'S MOTION TO REQUIRE UNITED STATES MARSHALS SERVICE TO SERVE SUMMONS & COMPLAINT; DENYING PLAINTIFF'S MOTION TO REQUIRE UNITED STATES MARSHALS SERVICE TO SERVE TWO NEW YORK STATE DEFENDANTS AND FOR SANCTIONS ON THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL'S OFFICE; DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT TIME WARNER; DENYING PLAINTIFF'S MOTION TO FILE A SURREPLY**

## I. INTRODUCTION

It is a rare event indeed when a court can resolve a truly voluminous case in a succinct, laborsaving manner; fortunately, this case is one in which that rare event will occur. The various Defendants[1] in this case have filed respective motions to dismiss, raising similar, if not identical,

---

[1] Plaintiff has filed suit against twenty-three named defendants. Three of these defendants – Brian G. Utley; Michael A. Reale; Raymond T. Hirsch – have not yet been served and have not had counsel enter an appearance in this matter. *See supra* n.9. Hereinafter, "Defendants" refers to those named defendants who have been served and are represented by counsel in this matter. Plaintiff has additionally filed suit against John & Jane Does and John Doe Companies. Defendants have self-categorized into the following six groups, each of which has filed a respective motion to dismiss: (1) the "Proskauer Defendants" include: Proskauer Rose, LLP; Kenneth Rubenstein; Christopher Wheeler; Steven C. Krane (2) the Meltzer Defendants include: Meltzer, Lippe, Goldstein & Breistone, LLP; Lewis S. Meltzer; (3) the Foley Defendants include: Foley & Lardner, LLP; William J. Dick; Douglas A. Boehm; Steven C. Becker; (4) the New York Defendants include: the State of New York; Thomas J. Cahill; Martin R. Gold; Richard T. Andrias; David B. Saxe; Lawrence DiGiovanna; Diana Maxfield Kearse; James E.

arguments. Among their arguments, Defendants assert that *pro se* Plaintiff, Mr. P. Stephen Lamont, previously litigated these claims and that they were ruled upon by the United States District Court for the Southern District of New York. The court agrees, and dismisses Plaintiff's sole federal claim under the doctrine of res judicata. Accordingly, the court grants defendants' motions to dismiss. Additionally, the court denies the following motions filed by Plaintiff: motion to disqualify the representative capacity of the New York State Attorney General; motion for leave to file an amended complaint; motion to amend the motion for leave to file an amended complaint; motion to file a surreply; motion to require the United States Marshals Service to serve summons and complaint; motion to require United States Marshals Service to Serve Two New York State Defendants and for Sanctions; and motion for a preliminary injunction.

## II. BACKGROUND

### A. Factual Background

The following alleged facts are presumed true for purposes of this order. Plaintiff, proceeding *pro se*, alleges that in the fall of 1998, three individuals (none of whom are Plaintiff) "stumbled upon" new technologies that would allow superior digital video. Compl. ¶ 32. According to Plaintiff, these technologies allow for the "encoding and transmission of digital video across all transmission networks," allow the digital zoom feature "on all video capture devices," and, lastly, allow the remote control of video devices. *Id.* ¶ 5. The three inventors soon formed a company called Iviewit, of which Plaintiff is currently the Chief Executive Officer. *Id.*

Sometime after 2000, Iviewit presented this new technology to Time Warner, Corp. and that company began to utilize the new technologies pursuant to specific agreements. *Id.* ¶ 47. In

---

Petlzer; (5) Defendant Time Warner, Inc.; (6) Raymond A. Joao. For ease, these categories will be used throughout this memorandum opinion.

the summer of 2001, however, Plaintiff alleges that Time Warner began using the technologies in unauthorized ways. *Id.* ¶ 49. Indeed, Plaintiff claims that Time Warner continues such unauthorized use, *id.* ¶ 1, and he has recently filed a preliminary injunction to halt this behavior, *see generally* Pl.'s Mot. for Preliminary Inj.[2]

In 2002, Iviewit discovered that the patent applications filed on its behalf with the United States Patent and Trademark Office ("USPTO") were "facially defective." *Id.* ¶ 50. Plaintiff believes that patent attorneys from the law firms of Proskauer Rose, LLP; Meltzer, Lippe, Goldstein & Breistone, LLP; and Foley Lardner, LLP committed fraud by filing such faulty applications and, in the case of Proskauer Rose, LLP, by representing Iviewit when there was a conflict of interest with another client, MPEGLA LLC. *Id.* ¶ 1, 62-65. As a result, Iviewit lodged a flurry of grievance complaints against these patent attorneys with the appropriate New York state disciplinary committees and the United States Patent and Trademark Office. *Id.* ¶¶ 50-57.

In 2011, Plaintiff commenced suit against Iviewit's prior patent lawyers and their respective law firms, the State of New York and several of its officials, past officers of Iviewit, Time Warner, and Jane and John Does and John Doe companies.[3] *See supra* n.1 ; Compl. ¶¶ 5-30. Plaintiff asserts that all of the defendants, with the sole exception of Time Warner, violated 42 U.S.C. § 1983. Additionally, Plaintiff invokes the court's supplemental jurisdiction to raise claims for fraud, conspiracy to commit fraud, breach of contract, and legal malpractice. Plaintiff demands that he is entitled to damages because he has suffered "more than twelve years of unpaid royalties on the [unauthorized use of these] technologies" and the "loss of value in the

---

[2]   As elaborated herein, the court determines that Plaintiff's case should be dismissed, and therefore denies as moot Plaintiff's motion for a preliminary injunction.

[3]   This case was transferred to the undersigned judge on April 3, 2012.

capital shares held by shareholders." *Id.* ¶ 79.  Defendants now move to dismiss Plaintiff's complaint.

### B. Plaintiff's Prior Case in the United States District Court for the Southern District of New York

In 2007, Plaintiff, proceeding *pro se*, along with Eliot Bernstein, one of the inventors of the technology at issue, filed suit in the Southern District of New York against hundreds of defendants, including the majority of defendants being sued before this court.[4]  *See generally Bernstein v. State of New York*, 591 F. Supp. 2d 448 (S.D.N.Y. 2008).  In rendering a 2008 memorandum opinion dismissing the case, Judge Scheindlin labored through a 1,000 paragraph complaint and summarized in great detail Plaintiff and Bernstein's factual allegations.  See *id.* at 452-58.

In that case, as here, Plaintiff alleged that Bernstein and others had invented video technologies that would allow one to "zoom almost infinitely on a low resolution file with clarity," and that those technologies became incorporated into "almost every digital camera and present screen display device." *Id.* at 453.  The *Bernstein* complaint further asserts that Proskauer partner Christopher C. Wheeler put Bernstein in touch with another Proskauer attorney, Kenneth Rubenstein and an attorney from Meltzer Lippe Goldstein Wolf & Schlissel, P.C., Raymond Joao. *Id*.  Rubenstein and Joao then performed trademark, trade secret, and copyright work for Iviewit, notwithstanding that Rubenstein was also counsel to MPEGLA LLC,

---

[4] In the instant case, only the following five defendants were not named defendants in Plaintiff's previous litigation: Proskauer partner, Christopher Wheeler; Time Warner, Inc.; Iviewit's former President and CEO, Brian G. Utley; Iviewit's former Vice President of Operations, Michael A. Reale; and Iviewit's former financial officer, Raymond Hirsch.  Although not named defendants in the previous case, Wheeler, Utley, and Reale were referred to by name and their role in the alleged conspiracy was discussed in Judge Scheindlin's 2008 order.  See *Bernstein*, 591 F. Supp. 2d at 453-55.

one of the largest users of the invented technology. *Id.* at 453-454. According to the *Bernstein* complaint, Rubenstein and Joao schemed to steal the new technologies, filing defective patents for Iviewit while creating illegitimate companies with names similar to Iviewit's and filing valid patent applications in those companies' names. *Id.*

The *Bernstein* complaint also details how Iviewit then obtained the services of Foley Larner LLP, who Plaintiff and Bernstein also alleged filed false patent applications. *Id.* at 454. At this point, Brian Utley and Michael Reale allegedly threatened Bernstein, stole Iviewit's equipment, and blew up Bernstein's car. *Id*.

Bernstein and Plaintiff contacted the New York Attorney General's Office and requested that the Attorney General and the New York State Disciplinary Committee investigate these attorneys' actions. *Id.* at 456. According to Plaintiff, Proskauer arranged for one of its partners, Steven C. Krane, to have the disciplinary complaints delayed and dismissed. New York judges of the First and Second Department Disciplinary Committee and the Court of Appeals were also allegedly part of the conspiracy. *Id.*

Based on these allegations, Plaintiff and Bernstein brought several federal claims, including, of particular note, a claim that defendants violated 42 U.S.C. § 1983 by "engag[ing] in a massive conspiracy to violate their civil rights." *Id.* at 452. Plaintiffs also brought a litany of state law claims, including fraud, breach of contract, and legal malpractice. *Id.* at 457. On August 8, 2008, Judge Scheindlin dismissed the § 1983 claims on statute of limitations grounds, defendants' immunity from suit, and the plaintiffs' failure to allege any wrongdoing. *Id.* at 464-68. She declined to exercise supplemental jurisdiction on the state claims. *Id.* at 469. In denying leave to replead, Judge Scheindlin found that there was "no reason to believe [that

Plaintiff and Bernstein] would ever be able" to state "a legally cognizable federal claim against a single defendant." *Id.*

Immediately thereafter, Plaintiff and Bernstein moved for reconsideration, but Judge Scheindlin declined to grant them such relief because the federal court system was "not the appropriate forum for plaintiffs to seek redress of these grievances." Order, *Bernstein v. State of New York*, Civ. No. 07-11196 at 3 (S.D.N.Y. Aug. 19, 2008). The *Bernstein* plaintiffs appealed and, on February 5, 2010, the Second Circuit dismissed their appeal as frivolous. *Mandate*, filed February 5, 2010, *Bernstein v. State of New York*, Civ. No. 07-11196.

On October 5, 12, 2010, Plaintiff, "individually, and on behalf of shareholders of Iviewit" moved to re-open the case. Pl. Lamont's Mot. to Reopen, filed Oct. 12, 2010, *Bernstein v. State of New York*, Civ. No. 07-11196. Judge Scheindlin denied this request. *See* Order, filed Dec. 15, 2010, *Bernstein v. State of New York*, Civ. No. 07-11196. Plaintiff again appealed and, on May 5, 2011, the Second Circuit dismissed the appeal as "lack[ing] an arguable basis in law or fact." *See* Mandate, filed May 5, 2012, *Bernstein v. State of New Yorkl*, Civ. No. 07-11196.

### III.  ANALYSIS

### A.  The Court Denies Plaintiff's Motion to Disqualify the Representative Capacity of the New York State Attorney General

As a threshold matter, Plaintiff moves to disqualify the Office of the New York Attorney General from representing current or former New York State officials that have been named as defendants in this case. *See generally* Pl.'s Mot. to Disqualify. Plaintiff argues that a conflict of interests exists because Plaintiff previously requested that the New York Attorney General prosecute the defendants in the instant action. *Id.* at 2.

As far as the court is aware, the New York Attorney General has not actually prosecuted any of the New York defendants, notwithstanding Plaintiff's requests to do so. For this same

reason, Judge Scheindlin previously denied Plaintiff's identical request to disqualify the New York Attorney General's representation in the case before her.  *See* N.Y. Defs.' Opp'n to Pl.'s Mot. to Disqualify, Judge Scheindlin's Ex. 1 (concluding that "the Attorney General does not face an improper conflict of interest in representing the State Defendants").  Accordingly, Plaintiff's motion to disqualify the Office of the New York Attorney General is denied.

## B. The Court Grants Defendants' Motions to Dismiss Based on Res Judicata Grounds[5]

### 1. Legal Standard – Res Judicata

"[T]he doctrine of res judicata holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004).  "Res judicata plays a central role in advancing the 'purpose for which civil courts have been established, *the conclusive resolution of disputes within their jurisdictions*.'" *Id.* (emphasis added) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters

---

[5] On August 6, 2012, Plaintiff moved for leave to file a surreply as to Defendants' motions to dismiss and Defendants' motions for sanctions.  *See generally* Pl.'s Mot. for Surreply.  Plaintiff wishes to bring to the court's attention an "emergency motion" purportedly filed on July 27, 2012 by Bernstein in the case in the Southern District of New York.  *See id.*, Ex. 1 ("Proposed Surreply").  According to Plaintiff, through this emergency motion, Bernstein now seeks to convert Plaintiff into a co-defendant in the *Bernstein* matter, notwithstanding that the matter has been closed since 2008.  As of this writing, the purported emergency motion is not on the Southern District of New York's electronic docket.  Nevertheless, the allegation that Bernstein now wants to sue Plaintiff in the *Bernstein* litigation is of no moment to the court's determination that res judicata applies. Because the decision to grant or deny leave to file a surreply is committed to the sound discretion of the court, *see Am. Forest & Paper Ass'n, Inc. v. Envtl. Prot. Agency*, 1996 WL 509601, at *3 (D.D.C. Sept. 4, 1996), and because the proposed surreply would add nothing to the court's analysis, the court denies Plaintiff's motion for leave to file a surreply.

reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-55.

Two distinct applications of res judicata exist: claim preclusion and issue preclusion. *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001). Under the claim preclusion, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal quotations omitted).

### 2. Res Judicata Bars Plaintiff's § 1983 Claims

#### a. Claim Preclusion

Noting the previous litigation in the Southern District of New York, Defendants argue that Plaintiff's complaint must be dismissed pursuant to the principles of res judicata.[6] *See, e.g.*, Foley Defs.' Mot. to Dismiss at 9-13. Claim preclusion bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court

---

[6] Defendants further argue that Plaintiff lacks standing because he does not have the right to sue in his own name, even as an individual shareholder, to assert Iviewit's property interests and because a *pro se* plaintiff cannot represent a corporation. *See, e.g.*, Proskauer Defs.' Mot. at 12-13. Because this issue is not jurisdictional, and because this case is properly dismissed under the doctrine of res judicata, the court declines to reach this issue. *See Labovitz v. Washington Times Corp.*, 172 F.3d 897, 900 (D.C. Cir. 1999) ("Although the [Defendant] characterizes this as a standing question, the issue here is who is the real party in interest, *see* Fed. R. Civ. P. 17(a), to bring a lawsuit 'under the governing substantive law to enforce the asserted right.'"); *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) (noting that while "[s]tanding and real-party-in-interest questions do overlap . . . the question whether the suit should be brought by [and individual stakeholder] or the Corporation really depends, as we have noted, on considerations and conventions of corporate law - whether the corporation should be entitled to bring an action, at least in the first instance, without the distraction of stockholders' suits - which we think are brought into play under Rule 17(a) of the Federal Rules of Civil Procedure").

8

of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). Additionally, claim preclusion has the additional requirement that the nonmoving party had a full and fair opportunity to litigate the claim. *Li v. Montgomery*, 2000 U.S. App. LEXIS 15467, at *3 (D.C. Cir. 2000).

There is little question that this case meets the first four elements of claim preclusion. First, this suit involves the same § 1983 claims as the previous litigation in the Southern District of New York. As described above, Judge Scheindlin dismissed Plaintiff's § 1983 claims relating to the alleged "conspiracy regarding the theft of inventions," the same claim asserted here. *Bernstein*, 591 F. Supp. 2d at 468. Plaintiff cites to case law for the notion that res judicata does not apply in the event that "other facts or conditions intervene" since the time of the first litigation. However, he does not argue nor point to any new factual developments since Judge Scheindlin's ruling that would form a new basis for a claim. *See* Pl.'s Opp'n to State Defs.' Mot. to Dismiss at 9.

As to Defendants' role in the previous litigation, all but five of the named defendants were also defendants in Plaintiff's previous suit. *See supra* n.4. Thus, with respect to the defendants who are "repeat players," this action and the previous action are "between the same parties or their privies" for purposes of res judicata.

Further, the court notes that Judge Scheindlin's decision to dismiss the § 1983 claims was a final judgment on the merits arising from a court of competent jurisdiction, the United States District Court for the Southern District of New York. *See Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (observing that an Article III court is a court of competent jurisdiction). Plaintiff argues that Judge Scheindlin's dismissal was not a final judgment on the merits because it relied, in part, on the expiration of the applicable statute of limitations. *See* Pl.'s Opp'n to

9

State Defs.' Mot. to Dismiss at 10.  The D.C. Circuit, however, has explicitly treated a dismissal on statute of limitations grounds as a judgment on the merits.  *Smalls*, 471 F.3d at 192.  Therefore, the first four elements of claim preclusion are met.

Lastly, the court turns to inquire whether Plaintiff received a full and fair opportunity to litigate the § 1983 claims before the Southern District of New York.  *See Bernstein*, 591 F. Supp. 2d at 448.  Plaintiff contends that he was not an individual plaintiff in the previous litigation, *see* Pl.'s Opp'n to Def. Joao's Mot. to Dismiss at 10, and also rejects the notion that he acted as a representative of the shareholders in the previous action, *see* Pl.'s Opp'n to Meltzer Defs.' Mot. to Dismiss at 15.  In other words, Plaintiff insists that he was not a litigant in the Southern District of New York case.  The record in that case, however, indicates otherwise.  In his motion to re-open the case before Judge Scheindlin, Plaintiff describes himself as an "individual Plaintiff."  *See* Pl. Lamont's Mot. to Re-Open, dated October 5, 2012, *Bernstein v. Appellate Division First Dep't, et al*, Civ. No. 07-11196 (S.D.N.Y.).  Indeed, Plaintiff's *pro se* status confirms that he was in fact suing as an individual.  *See* Ivey v. Geithner, 2009 U.S. App. LEXIS 7774, at *2 (D.C. Cir. Apr. 10, 2009) (noting that a *pro se* litigant "may not represent the interests of other parties").  Thus, the "P. Stephen Lamont" who filed suit *pro se* in this court is the same "P. Stephen Lamont" who filed suit *pro se* before the Southern District of New York.

Plaintiff next argues that he did not receive a fair opportunity because two of the judges involved in that prior case should have recused themselves due to conflicts but failed to do so.  Pl.'s Opp'n to State Defs.' Mot. to Dismiss at 11-12.  More specifically, Plaintiff claims that Judge Scheindlin owned shares of IBM and Intel.  Plaintiff also claims that his previous litigation was tainted because United States Court of Appeals for the Second Circuit Judge Richard C. Wesley received a pension from the State of New York, a defendant in this matter.  Plaintiff

10

claims that Judge Wesley took part in the *Bernstein* appeal. However, there is no record that Circuit Judge Wesley took part in this litigation. *See* Mandate, *Bernstein v. Appellate Division First Dep't, et al*, Civ. No. 11-5303 (2d. Cir. May 5, 2011) (indicating that the three-judge panel that heard Plaintiff's appeal was composed of Judges Ralph K. Winter, José A. Cabranes, and Mark Kravitz). In any event, Plaintiff should have raised these concerns regarding recusal in his previous litigation, instead of filing a new case before this court with the exact claims in order to raise his untimely recusal concerns. Accordingly, the court concludes that Plaintiff received full and fair opportunity to litigate his § 1983 claims before the Southern District of New York.

In sum, the court finds that the elements of claim preclusion are met with respect to the Plaintiff's § 1983 claims against Defendants who were also parties in the *Bernstein* matter. Because those claims are properly barred under claim preclusion, the court dismisses them with prejudice.

### b. Issue Preclusion

With respect to those five that were not litigants in *Bernstein*, issue preclusion bars Plaintiff's § 1983 claims.[7] "The objective of the doctrine of issue preclusion (also known as collateral estoppel) is judicial finality." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* (quoting *Allen*, 449 U.S. at 94). Issue preclusion applies if three criteria are met: (1) if in the prior litigation, the

---

[7] The court notes that under these circumstances claim preclusion may also bar the § 1983 claims against the non-*Bernstein* Defendants. *Hinton v. Rudasill*, 624 F. Supp. 2d 48, 51 (D.D.C. 2009) (explaining that non-mutual defensive estoppel "bars a party who has had a full and fair opportunity to litigate an issue in an earlier case and lost from relitigating that same issue in a later case against a different defendant"). Because issue preclusion applies, however, the court declines to reach the applicability of claim preclusion.

11

issue was "actually litigated, that is, contested by the parties and submitted for determination by the court;" (2) if the prior litigation was "actually and necessarily determined by a court of competent jurisdiction;" and (3) if "preclusion in the second trial [does] not work an unfairness" to the party bound by the first determination. *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (citations omitted). "An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude." *Yamaha Corp. of Am.*, 961 F.2d at 254.

As previously discussed, Plaintiff received a full and fair opportunity to litigate his § 1983 claims in the Southern District, a court of competent jurisdiction. There is nothing to suggest that Plaintiff lacked the proper incentive to litigate his § 1983 claims in the *Bernstein* litigation. Moreover, Judge Scheindlin rendered a final judgment, determining that Plaintiff's § 1983 claims should be dismissed, *inter alia*, on statute of limitations grounds and for failure to state a claim. *See generally Bernstein*, 591 F. Supp. 2d at 464-68. Before this court, Plaintiff again raises § 1983 claims based on the same factual allegations – claims that Judge Scheindlin has already found to be faulty under the applicable law and statute of limitations period. Therefore, because these § 1983 claims were litigated and determined in the Southern District of New York and because no unfairness to Plaintiff has been demonstrated, issue preclusion bars Plaintiff's § 1983 claims against the five non-*Bernstein* defendants." *See Yamaha Corp. of Am.*, 961 F.2d at 254-55 ("[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case.").

Accordingly, Plaintiff's § 1983 claims – the only federal claims before this court – are dismissed pursuant to the doctrine of res judicata.[8] With respect to Plaintiff's remaining claims,

---

[8] The court is inclined to dismiss Plaintiff's case for a variety of reasons, aside from res judicata grounds. Because, however, one of the main purposes behind the doctrine of res judicata is to

12

the court declines to assert its supplemental jurisdiction and dismisses this case in its entirety.[9] *See* 28 U.S.C. § 1367(c)(3).

### C. The Court Denies Plaintiff's Motion for Leave to Amend the Complaint

Plaintiff seeks to amend his complaint by: (1) dismissing Defendants Krane, Andrias, and Saxe, and (2) adding a § 1983 claim against Defendant Time Warner. However, as discussed above, Plaintiff's claims (including his § 1983 claims) are dismissed. *See supra* at Part III.B. Plaintiff's proposed amendments would not change this result. Raising an additional § 1983 claim against Time Warner would be futile because the claim would be dismissible for the same reasons discussed above. *See supra* n.8. Moreover, Plaintiff's attempt to amend his complaint so as to dismiss the claims against three of the Defendants is not necessary because the claims against these Defendants are dismissed as a result of this order. Accordingly, Plaintiff's proposed

---

conserve judicial resources and encourage the finality of judgments, the court declines to do so. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[9] Plaintiff has not served three Defendants: Defendants Utley, Reale, and Hirsch. Instead, Plaintiff moves the court to require the United States Marshals Service to serve the summons and complaint upon these defendants. *See generally* Pl.'s Mot. to Require U.S. Marshals Service to Serve Summons & Compl. Because the court determines that Plaintiff's suit is barred pursuant to the doctrine of res judicata, Plaintiff's motion to compel the United States Marshals Service to serve specific defendants is denied as moot.

Similarly, Plaintiff moves the court to require the United States Marshals Service to serve two of the New York State Defendants – Lawrence DiGiovanna and James Peltzer, and asks that the court impose sanctions on the New York Attorney General for allegedly evading service with respect to these two defendants. *See generally* Pl.'s Mot. to Require U.S. Marshals Service to Serve Summons & Compl. & Mot. for Sanctions. The court previously ordered that this motion be held in light of the pending motion to dismiss by the New York Defendants. Because the court now determines that dismissal is appropriate, Plaintiff's motion is also denied as moot.

amendments would be futile, Plaintiff's motion to amend is denied.[10] *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) (stating that "a district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss").

**SO ORDERED.**

August 8, 2012

*[signature: Barbara J. Rothstein]*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[10] On August 7, 2012, Plaintiff moved to amend his motion to amend. *See* Pl.'s "Amended Mot. for Leave to File a First Amended Compl." In addition to his previous proposed amendments, Plaintiff seeks to "[m]ore particularly specify the claims against Defendant Time Warner, Inc." and "expand" on his breach of contract claim against Defendant Time Warner, Inc. to include a "breach of duty not to oppose injunctive relief" claim. Because, however, this additional proposed claim would fall under the rubric of a contract claim, and because the court has declined to exercise supplemental jurisdiction as to those claims, the court denies Plaintiff's motion to amend his motion to amend.